THE WELWORTH REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90897.  Promulgated June 15, 1939.

*Henry S. Gottfried, Esq.*, and *George H. Drickamer, C. P. A.*, for the petitioner.
*DeWitt M. Evans, Esq.*, for the respondent.

OPINION.

TYSON: This proceeding involves an income tax deficiency of $1,607.27 for the fiscal year ended July 31, 1935.

The petitioner assigns as error the respondent's disallowance of a $12,000 adjustment, at the end of the taxable year, of its parent company's accrued rent of $24,000 for space occupied, during that year, in two buildings owned by the petitioner.

The question presented is whether the respondent properly exercised the authority granted him by section 45 of the Revenue Act of 1934 in determining that the sum of $12,000 should be allocated from the gross income of the L. N. Gross Co. to its subsidiary, the petitioner, in order to clearly reflect the latter's income.

The petitioner, a corporation, owns a four-story building containing 100,000 square feet of floor space, located at West 3rd Street and Lakeside Avenue, Cleveland, Ohio (hereinafter referred to as the Cleveland Building) and, also, a building at Kent, Ohio (hereinafter referred to as the Kent Building). During the taxable year and for several years prior thereto, 65 percent of the Cleveland Building and all of the Kent Building were rented to and occupied by the L. N. Gross Co., which owned and controlled 99.4 percent of the petitioner's capital stock. The other 35 percent of the Cleveland Building, comprising part of the basement, the first floor, and part

of the second floor, was rented to the Newspaper Enterprise Association. During the taxable year petitioner's sole business activity was that of owning, renting, and managing the Cleveland Building and the Kent Building.

The L. N. Gross Co. is a close family corporation, engaged in the dress manufacturing business. The same individuals were the officers of that company and of petitioner. Both companies occupied the same office and had the services of the same bookkeeper.

The petitioner had no original books of entry. All of its receipts and disbursements were handled by the L. N. Gross Co. and entered on the latter's books to petitioner's account and then posted in a ledger of the petitioner. The L. N. Gross Co. collected the rent paid by the Newspaper Enterprise Association for space in the Cleveland Building, deposited such rent in its own bank account, and credited it to the account of petitioner. The rentals for the space in the Cleveland Building and Kent Building occupied by the L. N. Gross Co. were not paid in cash, but were merely entered on the books to petitioner's credit. The accounts of the L. N. Gross Co. and of the petitioner were kept on the accrual basis of accounting and their respective income tax returns have been filed on that basis.

For several years prior to, and during the fiscal year 1935, it had been the practice of the L. N. Gross Co. and the petitioner to accrue on their books of account the amounts of $2,000 per month, totaling $24,000 per year, as rental for the 65,000 square feet of space in the Cleveland Building and the entire Kent Building occupied by the L. N. Gross Co. That rental of $24,000 per year was fixed without any relation to what would be a fair rental value for that space, but was considered by the L. N. Gross Co. to be a very "excessive" rental. It was "just a stab at a figure" representing a "sizable amount of money" which, if the L. N. Gross Co. had a good year and could afford to pay such amount to petitioner, the latter would thereby have sufficient income to reduce its debt to the L. N. Gross Co. by such amount. That debt consisted of advances by the L. N. Gross Co. used to make payments of principal and interest on a mortgage of petitioner on the property involved. Such advances to petitioner were carried on the L. N. Gross Co.'s books as an account receivable, amounting to approximately $50,000 in the taxable year, and the L. N. Gross Co. desired to have such account retired for the purpose of its credit rating. No interest was ever charged to or paid by petitioner on account of those advances.

At the end of each year, for a number of years, it had been the practice of the L. N. Gross Co. and the petitioner to make some adjustment of the accrued rental, based on the results of the L. N. Gross Co.'s business for the particular year, that is, in general, the amount of its earnings or losses. The adjustment was not made

upon a definite ratio to the L. N. Gross Co.'s current earnings nor was it based upon any investigation of actual fair rental values, but was determined by the officers of the two companies, in a round table discussion, based on what they thought represented a fair rental for the year, considering the relationship of the two companies and the fact that the L. N. Gross Co. paid all of the heating, elevator service, and ordinary maintenance expenses of the two buildings. Such expenses were approximately the same for the taxable year and several prior years and were taken and allowed as deductions on the income tax returns of the L. N. Gross Co. For the fiscal years ending July 31, 1932 to 1935, inclusive, the adjustments in the accrued rentals for each of those years for the space in the Cleveland Building and the Kent Building occupied by the L. N. Gross Co. resulted in reductions of $20,000 for 1932; $8,000 for 1933; none for 1934; and $12,000 for 1935, in such rentals.

Between the years 1933 and 1936 there was no material change in the rental value of industrial properties in Cleveland similar to the Cleveland Building involved in this proceeding. Nevertheless, varying adjustments were made in the L. N. Gross Co.'s accrued rental of $24,000 per annum except for the fiscal year ended July 31, 1934. For the taxable fiscal year ended July 31, 1935, the accrued rental of $1,500 per month, or $18,000 per annum, for the 65,000 square feet of space in the Cleveland Building, and of $500 per month, or $6,000 per annum, for the Kent Building, was adjusted by cutting those figures in half, representing a total reduction of $12,000, due to the fact that the L. N. Gross Co. could not afford to pay a high rental for that year from current earnings.

The uncontradicted evidence establishes that the adjusted rental of $9,000 per annum for 65,000 square feet of space in the Cleveland Building, or between 13 cents and 14 cents per square foot, without heat, elevator service, and ordinary maintenance expenses, was the fair rental value of that space for the taxable year ended July 31, 1935. No showing has been made as to the fair rental value of the Kent Building for that year.

The L. N. Gross Co.'s income tax return for the fiscal year ended July 31, 1934, showed, *inter alia*, a deduction of $24,000 for "Rent on Business Property" and a net income of $3,464.33. That company's return for the fiscal year ended July 31, 1935, showed, *inter alia*, a deduction of $12,000 for "Rent on Business Property" and a net loss of $1,790.59.

The petitioner's return for the taxable fiscal year ended July 31, 1935, reported a gross income of $12,000 less than that shown on its previous year's return, due to the downward adjustment of its accrued rentals as hereinbefore stated.

The deficiency in controversy is due to the respondent's determination, made under authority of section 45 of the Revenue Act of 1934,[1] that the petitioner's gross income as reported should be increased by the amount of $12,000 as a necessary allocation of gross income between the L. N. Gross Co. and the petitioner to clearly reflect the latter's income.

Section 45, *supra*, is similar to section 45 of the Revenue Act of 1928, the history and purpose of which was discussed at considerable length in *Asiatic Petroleum Co. (Delaware) Ltd.*, 31 B. T. A. 1152; affd., 79 Fed. (2d) 234; certiorari denied, 296 U. S. 645; rehearing denied, 296 U. S. 664. The purpose of that section is to prevent the arbitrary shifting of gross income and/or deductions among businesses owned or controlled by the same interests. The statute vests in the Commissioner the discretionary power to make allocations of gross income and/or deductions of such businesses when warranted in order (1) to "prevent evasion of taxes" or (2) "clearly to reflect the income" of any of such businesses. Furthermore, when the Commissioner, in the exercise of his discretion, determines that an allocation is necessary, the taxpayer has the burden of showing that such determination was arbitrary.

In the instant case a small group of individuals, through ownership of the stock of the L. N. Gross Co., controlled that company and its subsidiary, the petitioner, and they would be the beneficiaries of the combined profits realized from the businesses of those two companies. As stated by the secretary of both of those companies, "after all, the ownership was the same." The rental of $24,000 per annum was arbitrarily accrued on the books of both companies for each year and arbitrarily adjusted at the close of each year, for several years including the taxable year, for the purpose of showing favorable financial statements for the L. N. Gross Co. and without regard to the actual fair rental value of the petitioner's premises. At the close of the fiscal year ended July 31, 1934, which was a good year for the L. N. Gross Co., $24,000 of its gross income was arbitrarily shifted, as rental, to the gross income of petitioner. For the fiscal year ended July 31, 1935, the L. N. Gross Co. reported a net loss of $1,790.59 after taking a deduction of $12,000 as rental paid for the space it occupied in the Cleveland Building and Kent Building. At the close of the taxable year ended July 31, 1935, only

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

$12,000 of the L. N. Gross Co.'s gross income was shifted, as rental, to the gross income of petitioner, thereby arbitrarily reducing the petitioner's accrued rental income. The result, for the taxable year, was to reduce the petitioner's taxable net income by the amount of $12,000.

However, despite the method of adjusting the accrued rental on the Cleveland Building, the record establishes that the adjusted rental of $9,000 was the fair and reasonable rental for that space and, in our opinion, clearly reflected petitioner's correct income from that source. Accordingly, we conclude that the respondent's determination increasing petitioner's rental from the Cleveland Building from $9,000 per annum as reported, to $18,000 per annum was arbitrary and erroneous and his application of section 45, *supra*, is to that extent disapproved.

With respect to the Kent Building there has been no showing that the adjusted rental of $3,000 per annum was the fair and reasonable rental value thereof. Accordingly, we conclude that the record fails to establish as arbitrary the respondent's determination increasing the petitioner's Kent Building rental income to the accrued amount of $6,000 per annum, but instead substantiates the propriety thereof. The respondent's application of section 45, *supra*, in his determination of petitioner's income from the Kent Building is approved.

*Decision will be entered under Rule 50.*