A. G. Nelson Paper Company, Inc. v. Commissioner.
A. G. Nelson Paper Co. v. Commissioner
Docket No. 1553.
United States Tax Court
1944 Tax Ct. Memo LEXIS 128; 3 T.C.M. (CCH) 914; T.C.M. (RIA) 44286; August 30, 1944
*128 Raymond M. White, Esq., and William S. Lare, Esq., 1 Wall St., New York, N.Y Y., FOR THE PETITIONER. J. Richard Riggles, Jr., Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of a deficiency of $728 in income tax for 1939. The issue is whether the respondent erred in disallowing $5,200 of a deduction of $12,000 claimed for rent. Findings of Fact Petitioner, a New York corporation engaged in the business of wholesaling newsprint and book paper, filed its return for the taxable year with the collector for the second district of New York. It occupied 21,000 square feet of floor space in premises located at 220 West 18th Street, New York City, for which it paid an annual rental of $10,500, under a lease expiring in 1937. In addition thereto petitioner rented space in outside warehouses at an average annual rental of about $6,500 over a period of about ten years prior to 1937. Prior to the close of 1936, petitioner began to look for a new location for its business. Petitioner listed its needs with various brokers and inspected many properties. Among properties examined were premises known as 418-420 *129 West Broadway, hereinafter sometimes referred to as the "Broadway property". The property was in vary bad condition and required repairs and major improvements to make it suitable for petitioner's business. The owner declined to make the necessary repairs. Thereafter petitioner inspected other properties for which the owners were asking rentals ranging from 50 cents to 60 cents a square foot per annum. During the course of its examination of properties, petitioner agreed to execute a lease for 32,000 square feet of space at an annual rental of $16,000. The negotiations were discontinued upon receipt of notice from the owner that it could not legally rent the property for less than 80 cents a square foot. During the late spring of 1937, the owner of the Broadway property, containing about 48,000 square feet of floor space, offered to rent the premises to petitioner for a term of ten years at an annual rental of $4,500 for the first five years and at $5,500 for the remainder of the term, the lessee to make the necessary repairs and improvements. Petitioner estimated that necessary improvements would cost from $20,000 to $25,000, exclusive of a sprinkler system which it might be necessary *130 to install to comply with regulations of the City of New York. Petitioner's bank, where it had credit of about $50,000, declined to make a loan to petitioner, in addition to its regular credit, for the purpose of making the improvements. The petitioner concluded that a loan from other than a bank would be harmful to its credit. The Broadway property was the most attractive of any property offered to petitioner for rent. The paper business in the spring of 1937 was very bad and the future was uncertain, and petitioner considered it inadvisable to enter into a ten-year lease at that time. Fifty per cent of petitioner's stock was held by Arthur G. Nelson, president, treasurer and a director; 16 2/3 per cent by his wife, Christine W. Nelson; and 33 1/3 per cent by Leland M. Marshall, vice president, secretary and a director. Nelson and Marshall discussed the rental problem of petitioner with their respective wives, who had sufficient money of their own to finance the repairs and improvements necessary to put the Broadway property in suitable condition for occupancy. It was suggested to them that they might organize a corporation to lease the property; lend their money to the corporation *131 for the purpose of making the necessary repairs and improvements, and then lease the premises to petitioner. The proposed plan, after numerous discussions and careful consideration, including examination of the building by the wives, was carried out. The Plainridge Corporation was organized in September 1937 under the laws of New York, with a capital stock of 100 shares, of which 66 2/3 shares were issued to Christine W. Nelson and 33 1/3 shares to Harriet P. Marshall, wife of Leland M. Marshall. There has been no change in the stockholdings of the corporation. On September 24, 1937, the Plainridge Corporation leased the Broadway property for a term of ten years, commencing May 1, 1938, at an annual rental of $4,500 for the first five years and at $5,500 per annum thereafter. The second clause of the lease read as follows: "SECOND: The demised premises shall be used for purposes of conducting the business of selling, jobbing, converting, cutting, manufacturing, printing, storing and dealing in paper or paper products, or allied trades. The Tenant takes the premises in their present state and condition and the Landlord or the Landlord's agents make no representation as to the condition *132 of said premises or as to the fitness thereof for the purposes of the Tenant." The lessee agreed to make at its own expense alterations and repairs necessary to put the premises in suitable condition for occupancy and had no right to sublet the property without the consent of the lessor. The lessee was required to deposit with the lessor the sum of $2,250 for the faithful performance of the lease. One-half of this amount was to be returned to the lessee when a certificate of occupancy had been obtained and certain insurance taken out. The intention of the lessee at the time of acquiring the lease was to sublet the property to petitioner. Thereafter, in 1937, the Plainridge Corporation improved the premises at a cost of $15,829.72. Loans were made to the Plainridge Corporation as follows: 1937
1938
Petitioner
$2,250 [1]
Christine W. Nelson
8,500
$1,500
Harriet P. Marshall
4,000
700
The individuals used their own funds to make the loans. The money was loaned by the individuals to pay the cost of the repairs and improvements, and was used for that purpose. The loans were evidenced by unsecured notes of the borrower. Payment of *133 the notes was not guaranteed by Arthur G. Nelson or Leland M. Marshall. Interest was paid on the loans. Beginning in February 1940, the corporation made monthly payments to the individuals on the principal of the loans. The Plainridge Corporation kept books of account and rendered annual written financial statements to its stockholders. The work was done by employees of petitioner without cost to the Plainridge Corporation, pursuant to an agreement. The stockholders attended formal stockholders' meetings. The officers of the corporation were Arthur G. Nelson, president; Christine W. Nelson, vice president; Leland M. Marshall, secretary and treasurer. The president received an annual salary of $3,000 for his services. The Plainridge Corporation had no other employees. Its stockholders took no active part in conducting the corporation's affairs, which were confined to leasing the Broadway property to petitioner. The corporation's activities were conducted by Arthur G. Nelson. The Plainridge Corporation never intended to conduct a business on the premises it leased. Prior to the organization of the Plainridge Corporation, the petitioner orally agreed with Christine W. Nelson and Harriet *134 P. Marshall, that if they would organize a corporation and improve the Broadway property to meet its needs, petitioner would rent the premises without written lease at an annual rental of $12,000. No written lease was executed. Petitioner has occupied the premises since about January 1, 1938, without a written lease, paying therefor rent of $12,000 per annum, which amount was a fair rental for the premises in the taxable year, and was reported by the Plainridge Corporation in income tax returns. The Plainridge Corporation had no other income for the fiscal year ended September 30, 1939. For its next fiscal year it reported as gross income $12,000 rent and $117 interest. Petitioner is entitled to a deduction of $12,000 in 1939 as rent for the Broadway property. Opinion In his determination of the deficiency respondent disallowed $5,200 of the amount of $12,000 claimed by petitioner as a deduction for rent on the Broadway property and re lied upon section 45 of the Internal Revenue Code to support his action. Upon brief respondent's chief contention is, in substance, that petitioner was the real lessee of the property and that the Plainridge Corporation was merely an agent or branch *135 of the petitioner in the leasing transaction. The effect of his contention is to have us ignore the corporate entity of the lessee. Respondent asserts that family control of the two corporations requires such action. The rule is to recognize a corporation as an entity separate from its stockholders, except under unusual circumstances. Dalton v. Bowers, 287 U.S. 404; Burnet v. Clark, 287 U.S. 410; Burnet v. Commonwealth Improvement Co., 287 U.S. 415; New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435. Corporate entity has been disregarded when the corporation is a mere sham and lacks substance. Gregory v. Helvering, 293 U.S. 465. In Moline Properties, Inc. v. Commissioner, 319 U.S. 436, the court said: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience. so long as *136 that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. We find nothing in the facts here to justify a conclusion that the separate entity of the Plainridge Corporation should be disregarded. It had a legal existence under the laws of New York and has been recognized for Federal income tax purposes. It was organized to perform a business function and was actually engaged in a lawful business in and after the taxable year for profit. The fact that its affairs were confined to the leasing of property to sublet to petitioner after making improvements, is not enough to balance the scales in respondent's favor. It is not unusual for a corporation to limit its affairs to such an activity, or to be organized for the sole purpose of acquiring premises to sublet them to known tenants. Petitioner was in need of new premises for its business and being unable to finance improvements to a suitable building without impairing its bank credit, its two principal stockholders sought the assistance of their wives, and the negotiations which followed resulted in the consummation of a plan *137 beneficial to all concerned and without any idea of avoiding or minimizing tax liability. Termination of the existence of petitioner would not prevent the Plainridge Corporation from leasing the premises to another tenant. Except for a small loan, petitioner had no financial interest in the Plainridge Corporation. Such money as the lessee required to improve the premises was loaned by the wives, the organizers and stockholders of the corporation, from their own capital. There was no common ownership of stock of the corporation and there is no factual basis here for holding that the stockholders of petitioner controlled the stock of the Plainridge Corporation. The cases cited, supra, disclose that ownership of stock of corporations by one individual is not enough to disregard corporate entity. The case of United States v. Brager Bldg. & Land Corp., 124 Fed. (2d) 349, cited by respondent as containing facts similar to those here, is distinguishable. There the corporation was a mere agency, having no purpose other than to hold record title to property for its stockholder, a partnership. There was no agency arrangement here. The Plainridge Corporation *138 was a corporate entity distinct from petitioner, and we so hold. Respondent contends in the alternative that section 45 of the Code [1] authorizes him to apportion the deduction to prevent evasion of tax or clearly to reflect petitioner's income. His argument is predicated upon the assumption that the two corporations are owned and controlled by the same interests. We find no such control. Christine Nelson owned one-sixth of the outstanding stock of petitioner and two-thirds of the stock of the Plainridge Corporation. The owner of the remaining stock of the Plainridge Corporation held no stock of petitioner, and petitioner's other stockholders were not stockholders of the Plainridge Corporation. Based upon stock ownership, there was no control of the corporations by the same interests and the evidence does not contain evidence of indirect control other than that the wives of the owners of the majority stockholders of petitioner owned all of the stock of the Plainridge Corporation. Such a showing, without more, does not establish indirect control. *139 In the Welworth Realty Company, 40 B.T.A. 97, we said that "The purpose of that section [section 45] is to prevent the arbitrary shifting of gross income and/or deductions among businesses owned or controlled by the same interests". Of the amount of $12,000 paid by petitioner as rent, respondent allowed $6,800 and disallowed the remainder as a deduction. Upon brief he asserts that the amount allowed is equivalent to the rent payable under the lease, plus amortization of the improvements and interest on the loans made to make the improvements. He thus treats petitioner as the lessee and the borrower and apparently ignores the Plainridge Corporation, for it does not appear, and it is not claimed, that any amount was distributed, apportioned or allocated to that corporation. The effect of his action was to use section 45 to disallow a portion of the reasonable rent actually paid for the premises. The purpose of section 45 does not include the disallowance of deductions. General Industries Corporation, 35 B.T.A. 615. Accordingly, we hold that respondent erred in disallowing $5,200 of the rent deduction. Decision will *140 be entered under Rule 50. Footnotes
1. $1,125 repaid March 23, 1938.↩
1. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩