**SIMON J. MURPHY COMPANY and Social Research Foundation, Inc., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12491.

United States Court of Appeals Sixth Circuit.

April 2, 1956.

Berrien C. Eaton, Jr., Detroit, Mich. (Edward S. Reid, Jr., Miller, Canfield, Paddock & Stone, Detroit, Mich., on the brief), for petitioners.

Stanley P. Wagman, Washington, D. C. (H. Brian Holland, Ellis N. Slack and Robert N. Anderson, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioners seek a redetermination of income tax deficiencies assessed by the Commissioner for the years 1949 and 1950. The assessments were approved by the Tax Court in the amount of $8,-338.06 for the year 1949 and in the amount of $6,094.84 for the year 1950, which ruling is now before us for review.

The facts are stipulated and are summarized as follows: The Simon J. Mur-

phy Company, hereinafter called Murphy Company, was a Michigan corporation which prior to its dissolution in 1950 owned and successfully operated several parcels of improved commercial real estate in downtown Detroit. It consistently prepared its corporate income tax returns on the accrual basis of accounting. Social Research Foundation, hereinafter called Social Research, is an exempt, non-profit foundation incorporated as such under the laws of Michigan.

In 1949, Social Research acquired all of the outstanding capital stock of Murphy Company (126,000 shares), as follows: 3,900 shares were received as a gift from Charles B. G. Murphy; 30,800 shares were purchased from the estate of Fred T. Murphy at a price of $31.80 per share; and on December 29, 1949, 91,300 shares were purchased from the other stockholders at a price of $72.63 per share. Accordingly, Social Research became the sole shareholder of Murphy Company on December 29, 1949.

On January 11, 1950, Murphy Company filed with the State of Michigan a certificate of dissolution, thereby completing its liquidation under and pursuant to a Plan of Liquidation adopted on January 9, 1950, in the course of which Murphy Company transferred to Social Research all its real and personal property, subject to any and all debts and liabilities, which Social Research assumed and agreed to discharge, and Social Research surrendered to Murphy Company for complete cancellation and redemption all of the capital stock of that Company.

Subsequent to the liquidation and pursuant to the Plan of Liquidation, City of Detroit real estate taxes in the amount of $227,077.32, and Wayne County real estate taxes in the amount of $41,666.07, on the transferred real estate were paid by Social Research in the total amount of $268,743.39. Copies of the tax bills, pursuant to which said payments were made, show the following assessed valuations of the transferred real estate: Marquette Building $402,990.00, Murphy Building $201,050.00, Telegraph Building $203,490.00 and Penobscot Building $6,011,680.00. The Penobscot Building was encumbered in 1928 with a mortgage to the Northwestern Mutual Life Insurance Company in the amount of $7,000,000.00, the unpaid balance being $2,540,000.00 on December 29, 1949.

With certain minor or irrelevant exceptions all items of income and expense in connection with the ownership and operation of the transferred real estate were for tax and accounting purposes apportioned as to time between Social Research and Murphy Company as of January 11, 1950, except that the items of City of Detroit and Wayne County real estate taxes were accrued in their entirety as deductions by Murphy Company as of January 1, 1950. This treatment accorded with the past practice of Murphy Company in deducting real estate taxes in the taxable year when they accrued and became a debt. It is not disputed that under the Michigan statute and Detroit Ordinance the real estate taxes accrued on January 1, 1950.

In its final corporation income tax return filed on June 15, 1950, with respect to the taxable period January 1–11, 1950, Murphy Company included all rentals accruable during said taxable period, namely, $73,823.81. It deducted City of Detroit real estate taxes in the amount of $227,077.31, but did not deduct the Wayne County taxes. In its claim for refund and before the Tax Court it increased the deduction for real estate taxes to $268,743.39, so as to include the Wayne County taxes.

In order to protect itself against penalties for nonfiling in the contingency that it was not ruled exempt, Social Research, on or about June 15, 1950 filed a corporate income tax return for the period April 19, 1949 through March 31, 1950, made upon the accrual basis. In this return it deducted real estate taxes in the amount of $58,876.91. It arrived at this figure by estimating the aggregate City of Detroit and Wayne County real estate taxes for the periods covered (the exact amounts being then unknown) and then prorating them on a time basis

for the period January 12, 1950 through March 31, 1950.

Based upon a deduction of $268,743.39 for real estate taxes Murphy Company sustained a net operating loss of $234,-459.11 for the taxable period January 1 through 11, 1950. It thereafter filed a timely claim for refund with respect to over payment of its 1949 income taxes, which claim was based upon a net operating loss carry-back from the period January 1, through 11, 1950 in the amount of $234,459.11. Without formally ruling on the claim for refund the Commissioner subsequently determined the deficiencies in the 1949 and 1950 income taxes, which are the subject of this litigation. A deficiency assessment was also made against Social Research, as transferee. The assessments were based on the Commissioner's ruling that the City of Detroit taxes were allowable as a deduction in the 11-day period ended January 11, 1950 in an amount not in excess of $6,843.42, and that the Wayne County taxes were allowable as a deduction for the same period in an amount not in excess of $1,255.69. This was an allocation of the taxes on the basis of 11/365ths to Murphy Company and 354/365ths to Social Research.

In the Tax Court, petitioners challenged the right of the Commissioner to make such an allocation. They contended that the taxes became accrued liabilities on the part of Murphy Company on January 1, 1950 and under its accrual method of accounting were proper deductions in their entirety even though the corporation was dissolved on January 11, 1950. The Commissioner contended that the income of Murphy Company for the 11-day tax period in 1950 would be distorted and not clearly reflected if the Company was allowed to deduct the real estate taxes for 365 days while its income and other deductions reflected operations of only eleven days, and that he was authorized under Sections 41, 43 and 45 of the Internal Revenue Code, 26 U.S.C.A. §§ 41, 43, 45, to apportion or allocate the taxes between Murphy Company and Social Research in order to re-

flect clearly the income of each. The Tax Court held that the sections relied upon applied to deductions generally, including taxes; that section 45 applied even in the absence of fraud or deliberate tax avoidance; that the action of the Commissioner in allocating 11/365ths of the total tax to Murphy Company for the 11-day period was proper; and that the allocation was also necessary to dissolve the fiction that the operation of the Company was unprofitable during the first eleven days of January 1950.

The following well recognized principles are applicable to this case, concerning which the parties apparently have no dispute.

■ Section 23(c) (1), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(c) (1), provides that in computing net income there shall be allowed as deductions —"Taxes paid or accrued within the taxable year * * *." Where the taxpayer's books are kept on the accrual basis the taxes are deductible in the year of accrual rather than in the year in which they are paid. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Hygienic Products Co. v. Commissioner, 6 Cir., 111 F.2d 330, certiorari denied, 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 426; Commissioner of Internal Revenue v. Central United National Bank, 6 Cir., 99 F.2d 568.

■ It logically follows from this general rule that the owner of real estate at the time when the real estate tax accrues, if he is on the accrual basis, is entitled to take the accrued tax as a deduction in the year in which it accrues, although it is not paid by him in that year. H. H. Brown Co., 8 B.T.A. 112, 117; Arcade Department Store, Inc., 18 B.T.A. 1172, 1177; Edward C. Kohlsaat, 40 B.T.A. 528; Cooledge, 40 B.T.A. 1325; Ohmer Register Co. v. Commissioner, 6 Cir., 131 F.2d 682, 686, 143 A.L.R. 1164.

■ Petitioners contend that under United States v. Anderson, supra, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, and Magruder v. Supplee, 316 U.S. 394, 62 S.

Ct. 1162, 86 L.Ed. 1555, the accrued taxes against the transferred real estate were properly charged as a tax liability and tax deduction against Murphy Company for its taxable year 1950 and that it could not be taken as a tax deduction in 1950 by Social Research even though the tax was later paid by Social Research. It was held in Magruder v. Supplee, supra, that when the owner of real estate against which a tax has accrued transfers title to a purchaser who thereafter pays the tax, such payment by the purchaser can not be used by him as a deduction for income tax purposes, but must be considered as increasing the cost basis of the property purchased. The rule has been applied in this Circuit. Walsh-McGuire Co. v. Commissioner, 6 Cir., 97 F.2d 983; Gilken Corp. v. Commissioner, 6 Cir., 176 F.2d 141. In Magruder v. Supplee, supra, the Supreme Court refused to allocate any portion of the tax to the purchaser. This Court likewise refused to allocate any portion of the tax to the purchaser in Walsh-McGuire Co. v. Commissioner, supra. In Gilken Corp. v. Commissioner, supra, we approved and followed the ruling in Walsh-McGuire Co. v. Commissioner. Accordingly, we agree that the tax liability was on January 1, 1950 properly accrued on the books of Murphy Company as an income tax deduction for its taxable year 1950 and that a subsequent sale of the real estate to an independent purchaser in the regular course of business would not have cancelled this deduction or allocated any part of it to the purchaser.

The controversy arises by reason of Sections 41, 43 and 45, Internal Revenue Code, 1939, under the provisions of which the Commissioner acted so as to change the result reflected by the taxpayer's books. The sections are related ones dealing with accounting methods, and for the purposes of this case Section 45 appears to be the one under which the Commissioner's action stands or falls. It was not involved in Magruder v. Supplee, supra, or in Walsh-McGuire Co. v. Commissioner, supra. It

provides: "In any case of two or more organizations, trades, or businesses * * * owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to * * * apportion or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such * * * apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses." To what extent, if any, Section 45 changes the rule of Magruder v. Supplee, supra, is the question presented.

It should be noted in passing that the issue in this case will not exist in later taxable years governed by the Internal Revenue Code of 1954. Section 164(d) of the 1954 Code, 26 U.S.C.A. § 164(d), provides statutory authority for allocation of taxes on real property between the seller and purchaser.

The background of the statute is important. The consolidated returns provision of the Internal Revenue Law was limited to corporations as distinguished from individuals or partnerships. It was recognized that there was among related businesses a considerable amount of arbitrary shifting of profits from one business to another, resulting in distortion of income and the avoidance of taxes. To remedy this situation Congress enacted in 1921 a consolidated accounts provision applicable to two or more related trades or businesses, whether incorporated or unincorporated. Its purpose was to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standards of an uncontrolled taxpayer, the true net income of the property and business of a controlled taxpayer. Section 45 had its origin in that legislation. Asiatic Petroleum Co. v. Commissioner, 2 Cir., 79 F.2d 234, certiorari denied, 296 U.S. 645, 56 S. Ct. 248, 80 L.Ed. 459, rehearing denied, 296 U.S. 664, 56 S.Ct. 369, 80 L.Ed. 474; Welworth Realty Co., 40 B.T.A. 97; Mer-

tens, Law of Federal Income Taxation, Vol. 8, Secs. 46.68–46.69.

Litigation under the statute shows that the Section has been applied to circumstances involving an improper manipulation of financial accounts, an improper juggling of the accounts between the related organizations, an improper "milking" of one business for the benefit of the other, or some similar abuse of proper financial accounting, all made possible by the control of the two businesses by the same interests. When the Commissioner determined that a transaction between the controlled parties was not "at arm's length," an allocation would be justified in order to reflect the true net income which would have resulted if one uncontrolled taxpayer had dealt at arms length with another uncontrolled taxpayer. Substance has been substituted for form. Asiatic Petroleum Co. v. Commissioner, supra; Birmingham Ice & Cold Storage Co. v. Davis, 5 Cir., 112 F.2d 453; National Securities Corp. v. Commissioner, 3 Cir., 137 F.2d 600; Hugh Smith, Inc., V.C.I.R., 8 T. C. 660, affirmed, 6 Cir., 173 F.2d 224; Advance Machinery Exchange v. Commissioner, 2 Cir., 196 F.2d 1006; G. U. R. Co. v. C. I. R., 41 B.T.A. 223, affirmed, 7 Cir., 117 F.2d 187; Welworth Realty Co., 40 B.T.A. 97.

■ There are numerous cases in which the action of the Commissioner in attempting to allocate net income between controlled organizations was held not justified under Section 45. The Commissioner may not create income, where none exists. Tennessee-Arkansas Gravel Co. v. Commissioner, 6 Cir., 112 F.2d 508, 510; Texsun Supply Corp., 17 T.C. 433, 445. He may not disallow in its entirety a deduction authorized by other provisions of the Revenue Act. Hypotheek Land Co. v. Commissioner, 9 Cir., 200 F.2d 390, 396. He may not combine or consolidate the separate income of two or more separate, although controlled, organizations. Cedar Valley Distillery, Inc., 16 T.C. 870, 876; Seminole Flavor Co., 4 T.C. 1215, 1232–1235. Where the two separate business entities, although owned or controlled by the same interests, deal with each other at arms length as they would deal with strangers in the respective courses of their business activities, allocation is not permitted. Koppers Co., 2 T.C. 152; Palm Beach Aero Corp., 17 T.C. 1169; Friedlander Corp., 25 T.C. ——; Briggs-Killian Corp., 40 B.T.A. 895; Essex Broadcasters, Inc., 2 T.C. 523; Buffalo Meter Co., 10 T.C. 83; Epsen Lithographers v. O'Malley, D.C.Neb., 67 F. Supp. 181, 190–191.

■■ The foregoing cases point out the basic purpose of the statute to recognize the normal tax effect of bona fide business transactions between separate organizations, even though controlled by the same interests, but to enable the Commissioner to change the bookkeeping effect of a transaction between controlled taxpayers when, by reason of the relationship, they arbitrarily or improperly shift income or deductions from one organization to the other. As stated by the Tax Court, the application of Section 45 is not limited to cases of fraud. But, on the other hand, it does not automatically apply merely because the two organizations are controlled by the same interests. The Commissioner is not authorized to transfer income or deductions from one controlled organization to another, unless, by reason of the relationship the original distribution between the two entities, as reflected by the books, is in substance a fictitious one, improperly reflecting form instead of substance. In Koppers Co., supra, the Tax Court said 2 T.C. at page 157: "It is true that the taxpayer here was a controlled corporation. Nothing, however, was taken from it or conveyed to it over and above what would have passed between petitioner and an uncontrolled corporation in a similar transaction." In holding Section 45 inapplicable, the Tax Court further said, at page 158: "Then followed the transaction under which these bonds were redeemed by the taxpayer and which respondent asserts resulted in a shifting of profits and was 'fictitious.' We find, however, nothing fictitious in the transaction. It was the same transaction, in so far as the con-

sideration paid by the taxpayer for the redemption, as it would have been had it been carried out by the taxpayer with the public owners of the bonds prior to their acquisition by petitioner."

In the present case the transaction was a bona fide one. Since Social Research owned all the capital stock of Murphy Company, the consideration involved is not subject to attack as inadequate or fictitious. The transaction was entered on the books of the parties in accordance with approved established accounting methods. There was no juggling of accounts, no improper shifting of income or deductions from one company to the other, no "milking" of one corporation for the benefit of the other, in fact there was nothing in the transfer of the real estate from one corporation to the other, and the accounting entries in connection therewith, that could have been successfully challenged by the Commissioner. The action of the Commissioner rests upon the dissolution of the selling corporation following the transfer. But the rule in Magruder v. Supplee, supra, under which an accrued tax liability of the vendor of real estate can not be treated as a tax liability of the vendee who later pays the tax, is not changed because the vendor is dissolved or liquidated after the transfer. Brudno v. Commissioner, 6 Cir., 138 F.2d 779. Cf. Merchants Bank Bldg. Co. v. Helvering, 8 Cir., 84 F.2d 478, 481,

It is true that the dissolution of Murphy Company had tax consequences unfavorable to the Government. But as shown by the cases hereinabove referred to that does not authorize action under Section 45. Nor was dissolution illegal, improper or fraudulent. It was permissible corporate action which could have been taken by any corporation. If Murphy Company had sold its real estate to a different uncontrolled purchaser for cash, and used the cash to buy up its stock from Social Research or whomever its stockholders might be, and then dissolved, there would have been no impropriety in doing so, nor would Section 45 have been applicable.

What it could properly do in a transaction with an uncontrolled taxpayer, it can also properly do with a controlled taxpayer without subjecting itself to the provisions of Section 45. Mertens, Law of Federal Income Taxation, Sec. 46.69. The failure of the 1950 return to clearly reflect what the Commissioner considers is the actual net income of the taxpayer is not due to the control of one corporation over the other, but to the inherent nature of the accrual method of accounting, which, admittedly in this case, has been a recognized, approved method used by the taxpayer consistently over a period of many years. United States v. Anderson, supra; Sharp v. Commissioner, 6 Cir., 224 F.2d 920, 924. We do not find in the transaction here under review the collusive or improper conduct between controlled taxpayers which is necessary to permit the Commissioner to make an allocation of net income different from what was properly and legally reflected by the books.

The Tax Court and the Commissioner rely in part upon Jud Plumbing & Heating v. Commissioner, 5 Cir., 153 F.2d 681; Standard Paving Co. v. Commissioner, 10 Cir., 190 F.2d 330; and Central Cuba Sugar Co. v. Commissioner, 2 Cir., 198 F.2d 214, certiorari denied 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677. No one of these cases involved the question of real estate taxes. The two cases first cited dealt with the proper accounting of income, and appear to be applications of the rule now well established in such cases as Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L. Ed. 75; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670. The third case involved operating expenses, rather than real estate taxes accruing at a definite time as a matter of law and controlled by the rule in Magruder v. Supplee, supra. For these rea-

sons, we do not consider them applicable to the present issue.

 The Commissioner also contends that Section 122 of the 1939 Code, 26 U.S.C.A. § 122, under which the loss carry-back to 1949 is claimed, is limited to cases wherein the taxpayer has suffered a real economic loss, and does not authorize a loss carry-back where the loss is the result of bookkeeping entries, and is not a hardship case. Diamond A Cattle Co., 21 T.C. 1; Wheeler Insulated Wire Co., 22 T.C. 380. This issue was not raised by the Commissioner at the hearing before the Tax Court and was apparently an after-thought presented in the Commissioner's brief filed with the Court at a later time. The Tax Court found it unnecessary to decide the issue, but referred to the two cases above cited as being against the taxpayer. The rulings in those cases may be justified under the particular facts involved in each case, where income and deductions were handled in such a way as to reflect a paper loss when actually no loss was incurred. In the present case there was a liability created by statute, which was just as real an obligation as any operating expense. It was properly entered on the books of the taxpayer as an accrued liability. United States v. Anderson, supra. Under the ruling in this case it remains so. Under taxpayer's approved accrual method of reporting net income or operating loss for income taxes it is a bona fide, legal liability, and the resulting loss is an actual loss. We find nothing in the wording of the statute that exempts from its operation legal losses properly proven and shown for income tax purposes by a recognized approved method of accounting. Although Section 122 is limited in its application in a number of ways by its express provisions, the limitation contended for by the Commissioner is not included.

The judgment of the Tax Court is reversed and the case remanded for further proceedings consistent with the views expressed herein.