ALADDIN INDUSTRIES, INC. AND SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aladdin Industries, Inc. v. Commissioner
Docket No. 1981-79.
United States Tax Court
T.C. Memo 1981-245; 1981 Tax Ct. Memo LEXIS 496; 41 T.C.M. (CCH) 1515; T.C.M. (RIA) 81245; May 20, 1981. James T. O'Hare and William M. Waller, for the petitioners. Robert B. Nadler and Richard J. Neubauer, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: The Commissioner *497 determined deficiencies in the Federal income tax of petitioners for the taxable years ended April 30, 1972, April 27, 1975, and April 25, 1976, in the respective amounts of $ 163,952, $ 145,943.50, and $ 589,392.18. We have this matter before us on the parties' cross-motions for partial summary judgment. These issues are presented for our decision: (1) whether section 482, Internal Revenue Code of 1954, [1] can be applied to the sale of land by a partnership to its controlling partner; and (2) whether any material facts are in issue so as to preclude a decision in favor of petitioners on the substantive issue. Pursuant to Rule 121, Tax Court Rules of Practice and Procedure, petitioners filed affidavits with exhibits in support of their motion. Respondent, in opposing petitioners' motion, filed an affidavit. Subsequently, respondent made a cross-motion for summary judgment solely on the issue of whether section 482 may be applied to the sale of land by a partnership to a partner. Respondent filed no affidavits in support of such motion. Petitioners objected to respondent's *498 motion and supported such objection with an affidavit with exhibits. We refused, for failure to comply with Rule 121(e), Tax Court Rules of Practice and Procedure, to allow respondent to file an affidavit which he subsequently attempted to file. The pleadings of and affidavits filed by the parties contain the facts used for the purpose of ruling on these motions. Rule 121(b), Tax Court Rules of Practice and Procedure. Relevant facts from those pleadings and affidavits follow. Petitioner Aladdin Industries, Inc. (herein Aladdin), is a corporation organized under the laws of the State of Delaware, having its principal office and place of business in Nashville, Tennessee. The controversy with which this motion is concerned involves one of Aladdin's wholly owned domestic subsidiaries, Pathfinder Resources, Inc. (herein Pathfinder). Petitioners Aladdin, Pathfinder, and Aladdin's other domestic subsidiaries filed consolidated Federal income tax returns with the Internal Revenue Service Center at Memphis, Tennessee, for the taxable years in issue. On October 1, 1970, Pathfinder and an individual by the name of Robert C. Mathews, Jr. (herein Mathews) formed a partnership named *499 MAT-NEL Company (herein the Partnership). Mathews has never owned any stock in Aladdin and is not related to any of Aladdin's shareholders. The Partnership was formed for the purpose of "acquiring and integrating contiguous tracts of real estate in the bend of the Cumberland River in North Nashville, Tennessee, to hold for investment." Under the terms of the October 1, 1970, partnership agreement, Pathfinder and Mathews each had a 50 percent interest in the profits, losses and capital of the Partnership. By an amendment to the partnership agreement dated October 1, 1972, Mathews transferred a 45 percent interest in the Partnership to his controlled corporation, R. C. Mathews, Contractor, Inc. (herein Contractor). No stock of Contractor is owned directly or indirectly by Aladdin, its subsidiaries, or its stockholders. By an amendment dated January 1, 1973, the interests in the Partnership were altered to provide that the three partners would have the following interests in the Partnership: Interests in
Interests in
Profits & Losses
Capital
Pathfinder
80%
55.0%
Mathews
2%
4.5%
Contractor
18%
40.5%
The interests in the Partnership were shifted *500 because Pathfinder's parent, Aladdin, guaranteed a $ 9 million loan obtained by the Partnership and also because Pathfinder agreed to advance to the Partnership funds sufficient to pay the portion of the periodic interest payments which the Partnership itself did not have the funds to pay. The above-listed percentage interests in the Partnership were to be in effect only for as long as Pathfinder made such advances. During the taxable years before us, the above-listed percentages were in effect. Petitioners concede, for purposes of this motion, that the Partnership and Pathfinder were owned and controlled by the same interests. At all times the partnership agreement provided that Pathfinder and Mathews would have equal votes in decisions relating to the management of the Partnership, including but not limited to partnership operations, expenditures and investments involving amounts in excess of $ 1,000. On November 1, 1970, the Partnership entered into an Agreement to Lease with Aladdin in which Aladdin agreed to lease 50 acres of land from the Partnership for a term of five years beginning November 1, 1970, with the right to extend the lease term for an additional term of *501 not less than one nor more than five years at the same rental and terms. In addition, the agreement gave the lessee the option of purchasing all or any part of the 50 acres at any time during the lease term at a price of $ 6,000 per acre. The rental provided in the agreement was $ 60,000 per year payable in semi-annual installments of $ 30,000. On November 19, 1973, Aladdin assigned all of its right and interest in the lease agreement, including all option rights and obligations, to Pathfinder. On June 27, 1974, Pathfinder exercised the above-mentioned option and purchased 5.84 acres of the leased land from the Partnership, paying the purchase price specified in the option of $ 6,000 per acre. The purchase by Pathfinder was, in reality, of an undivided one-half interest in an 11.68-acre tract of the leased land. The other undivided one-half interest in such tract was sold at the same time to Malfam, Inc., an unrelated corporation, for $ 65,000 per acre. Neither Pathfinder nor the Partnership had any formal or informal agreement with anyone to sell the interest sold to Pathfinder to a third party. Pathfinder continued to hold this property after the sale until June 1, 1977, at *502 which time it exchanged its undivided one-half interest in the entire 11.68-acre tract for a sole interest in 5.84 specific acres of such tract. No rental or other income from transactions with third parties was derived from the sold property during the years involved. The property has not been used by Pathfinder or Aladdin since it was transferred. The sale of 5.84 acres of land by the Partnership to Pathfinder was reported on the Federal information return of the Partnership (Form 1965) for the calendar year 1974 as a sale of property by the Partnership at a sale price of $ 6,000 per acre or a total sale price of $ 35,040. Petitioners concede for purposes of their motion, that the fair market value of the 5.84 acres on June 27, 1974, was $ 65,000 per acre, as determined by the Commissioner. On November 1, 1975, a "Lease Extension Agreement" was entered into between the Partnership and Pathfinder with respect to the remaining 44.16 acres of the previously leased property. [2] The agreement provided for an extension of the 1970 Lease Agreement for five years upon payment of $ 53,000 per year "Basic Rent" in semi-annual installments of $ 26,500 and "Incremental Rent" for each *503 lease year in the following amounts: Year
Amount
1st year
$ 21,800
2nd year
16,800
3rd year
11,800
4th year
6,800
5th year
1,500
Pathfinder was given the option of buying all or any part of the 44.16 acres during the term of this latter agreement for $ 6,000 per acre with a credit against the purchase price of all of the Basic Rent that had been paid to the time of purchase. The Partnership reported this 1975 agreement on its 1975 *504 information return (Form 1065) as a sale of the 44.16 acres to Pathfinder at a price of $ 6,000 per acre. The 44.16 acres have never been deeded to Pathfinder, nor has Pathfinder ever "exercised" its option to purchase such land. The parties agree that, for purposes of these motions, the Court may treat the Lease Extension Agreement as a completed sale as reported on the 1975 information return of the Partnership. Petitioners concede, for purposes of their motion, that the fair market value of the 44.16 acres on November 1, 1975, was $ 45,000 per acre, as determined by the Commission. Since that date the 44.16-acre tract has not been sold or rented to any third party. The Commissioner determined that the sales prices of the two parcels (the 5.84-acre parcel sold in 1974 and the 44.16-acre parcel sold in 1975) should be adjusted to an arm's-length price pursuant to section 482. In accordance with this determination, the Commissioner increased the sale price of the 5.84-acre parcel from $ 35,040 to $ 379,600, which was the price paid by Malfam, Inc., for an identical interest in the same land. He also increased the sale price of the 44.16-acre tract from $ 265,000 to $ 1,987,200. *505 These increases in sales prices reduced the Partnership's losses in each relevant year and thereby reduced Pathfinder's share of the losses of the Partnership for its fiscal years ending April 27, 1975, and April 25, 1976. Section 482 provided, during the taxable years before us: In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not afiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. On a motion or summary judgment, the moving party has the burden of showing that the material facts of the case are not in issue. Shiosaki v. Commissioner, 61 T.C. 861, 863 (1974). Under Rule 121, Tax Court Rules of Practice and Procedure, "the existence of any reasonable *506 doubt as to the facts at issue must result in the denial of the motion." Hoeme v. Commissioner, 63 T.C. 18, 20 (1974). Under section 482, the Commissioner is vested with broad discretion. His determination will be overturned only if shown by the taxpayer to have been arbitrary or unreasonable. Ballentine Motor Co. v. Commissioner, 321 F.2d 796 (4th Cir. 1963), affg. 39 T.C. 348 (1962). At the outset we must dispose of a factual assumption erroneously requested by respondent. Respondent, in order to invoke his power under section 482, has determined that the transactions between the Partnership and Pathfinder constituted a scheme to evade taxes and distort the income of such entities. However, in his brief, he makes the following assertion: For purposes of petitioner's motion for summary judgment, the non-moving party, the respondent in this case, is entitled to the following findings of fact: (1) the sales of real property between the partnership and Pathfinders were transactions between two or more businesses or organizations owned or controlled by the same interests; (2) the efforts of the controlled businesses to sell properties *507 developed by the partnership at prices substantially below their market values and simultaneously allowing the partnership to claim business deductions of approximately $ 525,000.00 for the development costs of the land sold was a scheme to evade taxes; (3) the incomes of the controlled businesses were not clearly reflected by the sales of real property between the controlled entities at prices substantially below their market values; and (4) the respondent did not abuse his discretion in making an adjustment under section 482 in order to prevent the evasion of taxes or to clearly reflect the incomes of the controlled businesses. If the petitioner disputes any part of the facts as stated by the respondent, a genuine issue of material fact exists. In such event, the petitioner's motion for summary judgment should be denied, and the matter should proceed to trial. Items 2, 3, and 4 do not constitute "facts" to which respondent is entitled to a favorable finding for purposes of petitioners' motion for summary judgment. Rather, those items are statements regarding whether respondent's determination was arbitrary. The fact that petitioner disputes items 2, 3, and 4 above does not *508 by itself mean that there are material facts still in dispute. A determination of whether or not the Commissioner has exceeded or abused his discretion turns upon questions of fact, Ballentine v. Commissioner, supra at 800, but the Commissioner's determination itself is not a fact. Thus, merely because we must, when ruling on a party's motion for summary judgment, assume that all disputed factual issues would be resolved against such party, we need not in this case assume that respondent's determinations regarding distortion of income and tax evasion are correct. Rather, we must decide whether there are any genuine issues of fact herein that, if resolved in favor of respondent, would negate a finding that he abused his discretion. We are convinced that there are. First, we can quickly dispose of respondent's motion. Respondent requested summary judgment on the issue of whether section 482 can be applied between a partnership and a partner of such partnership. It can, at least when the partner is a corporation, as is here the case. Section 1.482-1(a)(1), Income Tax Regs., includes partnerships within its definition of "organization" for purposes of section *509 482. Likewise corporations are clearly organizations for this purpose. The phrase "organizations, trades, or businesses (whether or not incorporated * * *)" has been broadly construed. Ach v. Commissioner, 42 T.C. 114 (1964), affd. 358 F.2d 342 (6th Cir. 1966). Even individuals have been held to be covered by section 482. Ach v. Commissioner, supra; Cooper v. Commissioner, 64 T.C. 576 (1975). We see no reason why an organization should cease to be an "organization" for purposes of section 482 merely because it is a partner in another organization. Thus, respondent must prevail on the issue of whether section 482 may apply to a partnership and a corporate partner in such partnership. Petitioners first contend that the Commissioner has set up income where none exists and that, as a matter of law, he may not do so. Thus, we must review the creation-of-income doctrine in the context of this transaction to determine whether petitioners are entitled to summary judgment in their favor based upon this rationale. The Partnership sold, in two transactions, 50 acres of land to Pathfinder at substantially less than *510 the fair market value of such land. Pathfinder and the Partnership were controlled by the same interests. Because section 482 can apply as between a partnership and a corporate partner of such partnership, we next look to see if Pathfinder realized any gross income which may be allocated from Pathfinder to the Partnership. If it did not, the Commissioner, in applying section 482 to such a transaction, has set up income where none exists. For years it was held that this was an impermissible use of section 482. Tennessee- Arkansas Gravel Co. v. Commissioner, 112 F.2d 508 (6th Cir. 1940); Murphy Co. v. Commissioner, 231 F.2d 639 (6th Cir. 1956); Smith-Bridgman & Co. v. Commissioner, 16 T.C. 287 (1951); Texsun Supply Corp. v. Commissioner, 17 T.C. 433 (1951). Since this holding requires a court to trace the sources and uses of the allocated income, we subsequently decided several cases dealing with the mechanics of this tracing requiring. Huber Homes, Inc. v. Commissioner, 55 T.C. 598 (1971); PPG Industries, Inc. v. Commissioner, 55 T.C. 928 (1970); Kerry Investment Co. v. Commissioner, 58 T.C. 479 (1972), *511 revd. 500 F.2d 108 (9th Cir. 1974); Kahler Corp. v. Commissioner, 58 T.C. 496 (1972), revd. 486 F.2d 1 (8th Cir. 1973). Even though several appellate courts had decided, under the authority of Treasury Regulations which were issued in 1968, that the Commissioner could create income, B. Forman Co., Inc. v. Commissioner, 453 F.2d 1144 (2d Cir. 1972), cert. denied 407 U.S. 934 (1972), rehearing denied 409 U.S. 899 (1972), reversing on this issue 54 T.C. 912 (1970); Kerry Investment Co. v. Commissioner, 500 F.2d 108 (9th Cir. 1974), revg. 58 T.C. 479 (1972); Fitzgerald Motor Co. v. Commissioner, 508 F.2d 1096 (5th Cir. 1975), affg. 60 T.C. 957 (1973) (Tax Court found that taxpayer failed to adequately trace the loaned amounts to non-income producing uses), we held fast to our theory that the Commissioner could not create income. See Edwards v. Commissioner, 67 T.C. 224 (1976), where we reluctantly applied the rule in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), *512 cert. denied 404 U.S. 940 (1971) (herein the Golsen rule) to decide a case in a manner at odds with our own rule. However, chinks soon began to appear in the armor or our "no creation of income" rule. Kerry Investment Co. v. Commissioner, 58 T.C. 479, 494 (1972) (Featherston, J., dissenting); Kahler Corp. v. Commissioner, 58 T.C. 496, 512 (1972) (Featherston, J., dissenting); Collins Electrical Co. v. Commissioner, 67 T.C. 911, 921, n. 4 (1977). Finally, in 1977 we changed our position. In Latham Park Manor, Inc. v. Commissioner, 69 T.C. 199 (1977), affd. per order 618 F.2d 100 (4th Cir. 1980), two subsidiaries borrowed funds at interest from a third party and then lent them interest-free to their parent corporation, which realized no income from the use of the loaned funds. The Commissioner sought to allocate interest income to the subsidiaries under section 482. We held that income could be allocated to the subsidiaries regardless of the usage made of the funds, and explicitly overruled any inconsistent holdings in our Smith-Bridgman & Co., PPG Industries, Inc *513 ., Kerry Investment Co., and Kahler Corp. cases. [3] This case has generally been hailed as an abandonment of our prior position that the Commissioner cannot create income where none exists. Morton-Norwich Products, Inc. v. United States, 602 F.2d 270 (Ct. Cl. 1979). Our decision in Latham Park Manor, Inc. v. Commissioner, supra, an interest-free loan case, strongly relied on the Treasury Regulations promulgated under section 482, specifically, in that case, sections 1.482-1(d)(4) and 1.482-2(a)(1), Income Tax Regs. In Fegan v. Commissioner, 71 T.C. 791 (1979), we similarly relied heavily on a regulation, section 1.482-2(c), Income *514 Tax Regs., where tangible property was used rent free or at less than a fair rental. The same deference to the regulations which undergirded our decisions in those cases also leads us to the conclusion that section 1.482-2(e), Income Tax Regs., upon which respondent here relies, is a valid interpretation of section 482 and allows the Commissioner to create income in situations, such as the one before us, where property is sold between commonly controlled organizations at a non-arm's-length price. Thus, even though the Commissioner has here attempted to "allocate" income to the Partnership where it is agreed that no income has been realized from the property that was sold to Pathfinder, and even though such allocation constitutes a pure case of setting up income where none exists, under the rationale of our recent decisions in this area, the Commissioner has the power, under the auspices of section 1.482-2(e), Income Tax Regs., to set up such income. Of course petitioners argue that, even if we find section 1.482-2(e), Income Tax Regs., to be valid, nevertheless they must prevail on this issue because the Sixth Circuit, to which this case is appealable, does not allow the Commissioner, *515 under section 482, to "set up income where none exists." Tennessee- Arkansas Gravel Co. v. Commissioner, 112 F.2d 508 (6th Cir. 1940); Murphy Co. v. Commissioner, 231 F.2d 639 (6th Cir. 1956). Therefore, they contend, we must follow the rule of that circuit under the Golsen rule. We disagree. In Golsen v. Commissioner, supra, we said that "where the Court of Appeals to which an appeal lies has already passed upon the issue before us, efficient and harmonious judicial administration calls for us to follow the decision of that court." 54 T.C. at 757. Inasmuch as the underpinning for our recent decisions on the creation-of-income issue is our determination that the regulations asserting such a power are reasonable, and inasmuch as the Sixth Circuit cases which have spoken to the creation-of-income question were decided prior to the 1968 issuance of those regulations, the Sixth Circuit has not, in any real sense, passed upon the issue before us, i.e., the validity of the applicable Treasury regulations. Thus, we are not bound under the Golsen rule by the cases cited by petitioners. Accord, Kent v. Commissioner, 61 T.C. 133 (1973). *516 Petitioners must fail in their attempt to prevail herein, as a matter of law, on the basis of the creation-of-income doctrine. Petitioners also contend that they are entitled to a decision in their favor as a matter of law based upon the following argument. They would have us recast the sale of the property from the Partnership to Pathfinder as a partnership distribution in the amount of the excess of the fair market value of such property over the amount paid by Pathfinder, analogizing to bargain-sale situations in the corporate context. If we were to so characterize the transaction, then, petitioners argue, any gain realized by the Partnership upon such distribution is not recognized under section 731(b), nor would the partner (Pathfinder) recognize any gain because of the non-recognition treatment prescribed by section 731(a)(1). Realizing that such a characterization would bring section 731 directly in conflict with section 482, petitioners contend that section 731 should control. We need not decide the intriguing question of which section would dominate in such a situation [4] because we believe that petitioners, having cast the transaction as a sale, must accept the tax *517 consequences of such choice and may not enjoy the benefit of some other route that they might have chosen to follow but did not. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134 (1974); Higgins v. Smith, 308 U.S. 473 (1940). [5] Petitioners and the partnership that they controlled (which control was conceded for purposes of this motion) cast this transaction as a sale and will not now be heard to say that such transaction was, in reality, a partnership distribution. Thus, petitioners cannot prevail as a matter of law on this rationale. *518 In order to decide this case, we must determine whether the Partnership was, in reality, controlled by the same interests that controlled Pathfinder, and we must determine the fair market value of the property sold. Both of these issues are questions of fact. Because there are, therefore, genuine issues of material facts a motion for summary judgment cannot be granted. An appropriate order will be entered. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The parties have treated this sale as being of only 5.84 acres, hereater disregarding the other 5.84 acres that were sold to Malfam, Inc. They discuss the ensuing transactions as if 44.16 acres (50 acres leased less the 5.84 acres sold) remain to be disposed of by the Partnership. The sale to Malfam, Inc., is treated as having never happened. Neither party notices or explains this oversight, and, because the existence or non-existence of such sale does not affect our holding on the issues before us, we also will ignore that part of the transaction, except to the extent that it indicates that the fair market value of an undivided one-half interest in the 11.68-acre tract was $ 65,000, as opposed to $ 6,000, per acre.↩
3. A concurrence by Judge Scott points out that the facts in Latham Park Manor, Inc. v. Commissioner, 69 T.C. 199 (1977), affd. per order 618 F.2d 100 (4th Cir. 1980), could just as easily be viewed as requiring an allocation of deductions. Such a perspective would not require a retreat from our "no creation of income" rule. Cf. Fegan v. Commissioner, 71 T.C. 791 (1979); Cappuccilli v. Commissioner, T.C. Memo. 1980-347↩.
4. It has been routinely held that, absent an abuse of discretion by the Commissioner, sec. 482 will override specific non-recognition provisions of the Code. National Securities Corp. v. Commissioner, 137 F.2d 600 (3d Cir. 1943), cert. denied 320 U.S. 794 (1943); Central Cuba Sugar Co. v. Commissioner, 198 F.2d 214 (2d Cir. 1952), cert. denied 344 U.S. 874 (1952); Aiken Drive-In Theatre Corp. v. United States, 281 F.2d 7 (4th Cir. 1960); Rooney v. United States, 305 F.2d 681 (9th Cir. 1962); sec. 1.482-1(d)(5), Income Tax Regs. The presence or absence of a tax avoidance motive has also been thought to be irrelevant in the application of section 482. Central Cuba Sugar Co. v. Commissioner, supra; sec. 1.482-1(c), Income Tax Regs; Bittker and Eustice, Federal Income Taxation of Corporations and shareholders, par. 15.06, p. 15-24 (4th ed. 1979). However, in a recent case the Court of Claims (one judge dissenting) decided that where no tax avoidance existed, the Commissioner could not use section 482 to override the non-recognition treatment accorded qualifying reorganizations. Ruddick Corp. v. United States,     Ct. Cl.     ( Feb. 25, 1981, 47 AFTR 2d 81↩-846, 81-1 USTC par. 9221). Both the majority and the dissenting opinions are well reasoned and provide some food for thought. 5. The Danielson ( Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), cert. denied 389 U.S. 858 (1967)) and Ullman ( Ullman v. Commissioner, 264 F.2d 305↩ (2d Cir. 1959)) rules, which in some situations allow a taxpayer to argue against his own form, are here inapplicable because both rules were predicated upon the existence of arm's-length bargaining over the very terms which the taxpayer was trying to dispute. Such is not the case here, since this transaction was clearly not at arm's length.