Texsun Supply Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 26182. Promulgated September 27, 1951.

*R. D. Cox, Jr., Esq.*, and *John R. Freeland, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

436

440

OPINION.

BLACK, *Judge:* The first issue to decide is whether petitioner is liable as a transferee of Roseland and whether the statute of limitations has barred the assessment and collection of the deficiencies which the Commissioner has determined against Roseland.

With reference to the statute of limitations the principal contention of petitioner is that it is not a transferee of Roseland, but that by reason of its merger with Roseland on October 31, 1944, under the laws of the State of Louisiana it became the primary taxpayer and was not secondarily liable as a transferee. In support of this contention petitioner cites *Oswego Falls Corporation*, 26 B. T. A. 60, affd. 71 F. 2d 673, and *A. D. Saenger*, 38 B. T. A. 1295, and also other cases along the same lines. Petitioner concedes that if it is liable as a transferee under section 311, I. R. C., then the statute of limitations had not run at the time the deficiency notice was mailed October 3, 1949. This was because of the waiver which was executed by petitioner and the Commissioner December 20, 1948. The pertinent

sections of the Code relating to transferee liability are printed in the margin.[1]

In *West Texas Refining & Development Co.* v. *Commissioner*, 68 F. 2d 77, the general principles governing the transferee liability of successor corporations were outlined as follows:

The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *

To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. * * *

Certainly (1) mentioned in the above recital by the court is present in the instant case; also (2) is present. In the agreement of merger the material parts of which are copied in our findings of fact Citrus Supply Corporation, now Texsun, expressly agreed to the following:

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\* \* \* \* \* \* \*

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows :

(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer ;

\* \* \* \* \* \* \*

(4) Where before the expiration of the time prescribed in paragraph (1), (2), or (3) for the assessment of the liability, both the Commissioner and the transferee or fiduciary have consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

\* \* \* \* \* \* \*

(d) SUSPENSION OF RUNNING OF STATUTE OF LIMITATIONS.—The running of the statute of limitations upon the assessment of the liability of a transferee or fiduciary shall, after the mailing to the transferee or fiduciary of the notice provided for in section 272 (a), be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary, (and in any event, if a proceeding in respect of the liability is placed on the docket of the Board, until the decision of the Board becomes final) and for sixty days thereafter

\* \* \* \* \* \* \*

(f) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

Citrus Supply Corporation agrees to assume the payment of and pay when due each and every obligation and debt Roseland Manufacturing Company, Inc., including any and all income, franchise, capital stock, social security, severance, ad valorem, or other tax and any mortgage, license fee, or rental heretofore or hereafter accruing against Roseland Manufacturing Company, Inc. provided that nothing herein shall constitute a release, cancellation, surrender or discharge of that certain indemnity agreement heretofore executed by H. J. Wilson, et al., dated the 13th day of November, 1943, in favor of Citrus Supply Corporation.

Here we have a direct contract liability which Texsun made with Roseland that it would assume and agree to pay all income tax heretofore or hereafter owing by Roseland. Where, upon the sale of property or the assets of a corporation, the purchaser agrees to pay all of the debts of the transferor, it is liable as transferee for the tax. *Resthaven Memorial Cemetery, Inc.*, 30 B. T. A. 583; *Georgia, Florida & Alabama R. R. Co.*, 31 B. T. A. 1. In a case in which the purchaser assumed all obligations and liabilities "whether accrued or to accrue in the future," it has been held that the purchaser is liable as transferee, although the deficiency had not been asserted at the date the contract was executed. *Helvering* v. *Wheeling Mold Foundry Co.*, 71 F. 2d 749.

It seems to us to be clear that under the foregoing authorities petitioner became liable at law by contract as a transferee of Roseland under the terms of its agreement which we have set out above. Certainly petitioner is liable at law as a transferee for any income and excess profits tax due by Roseland unless, as petitioner contends, *Oswego Falls Corp.*, *supra*, and *A. D. Saenger*, *supra*, are controlling to the contrary. We do not think those cases are controlling to the contrary. There was not present in those cases the definite contractual obligation to pay the taxes of the consolidating corporations which were there involved and there was not present a consent waiver executed by the new corporation entitled "Consent Fixing Period of Limitations Upon Assessment of Liability at Law or in Equity for Income and Profits Tax Against a Transferee." These things, as we have already pointed out are present in the instant case and that, we think, makes the instant case distinguishable from *Oswego Falls Corp.* and *A. D. Saenger*, both *supra*.

We, therefore, hold that petitioner is liable as transferee of Roseland and that at the time of the mailing of the deficiency notice October 3, 1949, its liability as transferee was not barred by the statute of limitations. Petitioner's assignments of error (a) and (b) are not sustained.

The second contention of petitioner is that section 45 of the Code is inapplicable here because there is lacking the statutory requirement of ownership or control. That portion of section 45 upon which petitioner relies is italicized:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) *owned or controlled directly or indirectly by the same interests,* the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

"Controlled", as the term is used in section 45, I. R. C., is defined in Regulations 111, sec. 29.45-1, but no attempt is made there to define "owned."

Petitioner relies upon *Lake Erie & Pittsburg Railway Co.*, 5 T. C. 558. There we held that the taxpayer was not controlled by the same interests, as the shares of stock of the taxpayer were owned in equal amounts by two other railroad corporations. *Lake Erie & Pittsburg Railway Company, supra,* is to be distinguished from the fact situation presented in the proceeding now before us, for here all the shares of stock of Roseland were owned by petitioner, the boards of directors of both petitioner and Roseland were composed of the same members, and both corporations were managed by the same person. From these facts we conclude that petitioner owned Roseland and controlled it as well. Cf. *Grenada Industries, Inc.*, 17 T. C. 231.

Since we have decided that the relationship between the corporations was such as would satisfy the provisions of section 45, I. R. C., we now consider the third issue: Did the Commissioner err in his determination that gross income of $246,975.95 less increased expenses of $74,648.90 resulting in a net amount of $172,147.05 should be allocated to Roseland? Petitioner contends that such allocation was improper because the gross income of $246,795.95 was not the gross income of petitioner.

For his authority to make this adjustment to Roseland's sales respondent relies on section 45 of the Code, which authorizes the Commissioner under certain circumstances to "distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among organizations." The adjustment here in issue arises by virtue of increasing from cost price to prevailing O. P. A. prices the charge for Bruce boxes made by Roseland and sold to petitioner. In making such an adjustment respondent purported to distribute, apportion or allocate gross income to Roseland under the provisions of section 45. Gross income so allocated to Roseland must come from another organization, trade, or business, which in the instant proceeding must be the petitioner. But as we understand petitioner's corporate structure and the way it carried on its business, petitioner, as a matter of fact, derived no gross income from the operation of its container pool during the taxable period. Corporation gross income is ordinarily com-

puted on Form 1120 as follows: Gross sales, minus cost of goods sold, equals gross profits from sales, plus other corporation income, equals total gross income.

From its container pool petitioner made no sales to nonmembers, and so, from the operation of the container pool petitioner received no gross income, or profits, from nonmembers that might be distributed to its members as dividends. Petitioner was so organized and operated that no dividends were distributed or credited to its members as a return on their capital investment. Petitioner was required to sell supplies to its members at cost, to be computed for each of petitioner's pools at the end of each fiscal year; see Article XII of petitioner's by-laws, as set forth in our findings of fact. The stipulated facts show that petitioner complied with the foregoing provisions of its by-laws in dealing with its member cooperatives. This by-law provided among other things:

At the end of each fiscal year (which is April 30th of each year), Corporation shall determine for all supplies purchased by each member from, through, or with this Corporation, the amount the aggregate gross prices exceed the aggregate net prices, and this amount shall be the "gross rebate" due to each member. There shall be deducted from the gross rebate due each member such proportion of the total overhead and other operating expenses of this Corporation as the gross rebate due each member bears to the total gross rebates due all members, and this amount shall be the net rebate due each member, and this Corporation shall pay to each member its net rebate as soon thereafter as practical.

The amount of the year-end credit given, or the container pool rebate, was computed on a proportional basis, depending upon the percentage participation of each member association in the total sales of petitioner's container pool during the year. Rebates of the nature made by the cooperative, Texsun, are an adjustment to its gross soles and as such, the sum of the rebate credits made to members for participation in the container pool is to be excluded from petitioner's gross income. The Commissioner has recognized that rebates of the type credited by petitioner herein to its member associations are amounts not includible in the gross income of petitioner. 1938-2 C. B. 127 et seq. The ruling explains that:

Under long established Bureau practice, amounts payable to patrons of cooperative corporations as so-called patronage dividends have been consistently excluded from the gross income of such corporations. The practice is based on the theory that such amounts in reality represent a reduction in cost to the patron of goods purchased by him through the corporation or an additional consideration due the patron for goods sold by him through the corporation. As such amounts are not includible in gross income of the corporation, they are obviously not deductible by it, though, where they have been erroneously included in gross income in the first instance, the correcting adjustment is sometimes loosely termed a deduction. * * *

As the rebates credited by petitioner to members of its container pool are to be excluded from petitioner's gross income, they were not a part

of petitioner's gross income. Petitioner, therefore, had no gross income subject to distribution, apportionment or allocation to Roseland by the Commissioner acting under the provisions of section 45 of the Code. While the fact situation presented herein is novel, we have on several occasions held that the Commissioner is not authorized under that section to allocate gross income, where none in fact existed. In *Smith-Bridgman & Co.*, 16 T. C. 287, we said:

> In support of his action the respondent argues that Continental, in securing these non-interest-bearing loans from petitioner, was enabled to relieve itself from paying interest on its outstanding debentures; and, furthermore, he argues, petitioner could have loaned the funds which Continental borrowed without interest to third parties at 4 per cent interest. Therefore, in order to prevent evasion of taxes and to clearly reflect the income of such related businesses, he has "allocated" to petitioner part of the income of its parent, in the exercise of the discretion conferred by section 45 of the code. The decisions involving section 45 make it clear that its principal purpose is to prevent the manipulation of or improper shifting of gross income and deductions between two or more organizations, trades, or businesses. Its application is predicated on the existance of income. The courts have consistently refused to interpret section 45 as authorizing the creation of income out of a transaction where no income was realized by any of the commonly controlled businesses. *Tennessee-Arkansas Gravel Co.* v. *Commissioner*, 112 Fed. (2d) 508; * * *

What respondent seeks to do here, acting under section 45, is to allocate amounts of alleged gross income which were actually rebated to petitioner's member cooperatives and which rebates petitioner was under a legal obligation to make under its by-laws. These amounts were never the gross income of petitioner and we do not think that the provisions of section 45 can be construed so broadly as to permit the Commissioner to do what he seeks to do here. If section 45 is to be applied in that broad a manner it would in our opinion, require legislation by Congress.

Respondent's allocation is not sustained.

Reviewed by the Court.

*Decision will be entered for the petitioner.*