FITZGERALD MOTOR COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LOANS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2135–72, 2136–72. Filed September 24, 1973.

*Richard E. Thomasson,* for the petitioners.
*Edward P. Phillips,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined deficiencies in income tax as follows:

| Docket No. | Petitioner | TYE July, 31— | Amount |
|---|---|---|---|
| 2135-72 | Fitzgerald Motor Co., Inc | 1966 | $684.34 |
|  |  | 1967 | 722.46 |
|  |  | 1968 | 2,081.56 |
| 2136-72 | Loans, Inc | 1966 | 1,039.54 |
|  |  | 1967 | 1,046.15 |
|  |  | 1968 | 2,300.38 |

At issue is the propriety of the Commissioner's action under section 482 of the 1954 Code in allocating additional income to petitioners in respect of loans to brother-sister corporations that were interest-free or at less than arm's-length rates of interest. The facts have been stipulated.

Petitioner Fitzgerald Motor Co., Inc. (Fitzgerald) was a Georgia corporation engaged in the retail automobile business. Petitioner Loans, Inc. (Loans), also a Georgia corporation, was engaged in the business of providing financing on automobiles sold by Fitzgerald. Each petitioner's books and records were maintained on an accrual basis of accounting and their Federal corporate income tax returns were filed on a fiscal year ending July 31. Their respective tax returns for each of the taxable years ending July 31, 1966, and July 31, 1967, were filed with the district director of internal revenue at Atlanta, Ga., and their returns for the taxable year ending July 31, 1968, were filed with the Southeast Service Center at Chamblee, Ga. At the time their petitions herein were filed, the principal office of both corporations was in Fitzgerald, Ga.

At all times relevant hereto, the sole stockholder of both Fitzgerald and Loans was one B. I. Anderson. Anderson also owned all of the stock of Dixie Peanut Co., Inc. (Dixie), a Georgia corporation operating as a wholesale dealer in peanuts and corn, and he served as president and chairman of the respective boards of directors of all three corporations. Dixie was an accrual basis taxpayer and filed Federal corporate income tax returns on a calendar year basis.

Prior to and during the tax period in issue, Fitzgerald made advances to Dixie, and Loans made advances to both Fitzgerald and Dixie. The table below sets forth the balances in the intercompany loan accounts as of July 31 of each year shown:

| Year | Owed to Fitzgerald by Dixie | Owed to Loans by Fitzgerald | Owed to Loans by Dixie |
|---|---|---|---|
| 1968 | $182,689.73 | $80,199.80 | [1] $21,805.86 |
| 1967 | 174,933.07 | 74,499.41 | [1] 21,805.86 |
| 1966 | [1] 169,783.66 | 71,304.90 | [1] 21,805.86 |
| 1965 | 169,521.16 | 62,935.89 | 21,805.86 |
| 1964 | 188,058.40 | 39,368.93 | 21,805.86 |
| 1963 | 181,843.31 | 46,975.91 | 21,805.86 |
| 1962 | 181,043.91 | 27,690.44 | 21,805.86 |
| 1961 | 175,923.70 | 28,693.01 | 16,000.00 |
| 1960 | 76,840.07 | 25,507.60 | 10,000.00 |
| 1959 | 67,829.92 | 30,565.40 | 10,000.00 |
| 1958 | 59,584.35 | 36,633.44 | 10,000.00 |
| 1957 | 52,380.82 | 13,900.45 | 10,000.00 |
| 1956 | 45,432.46 | 4,225.05 | ----------- |
| 1955 | 30,572.13 | 8,789.97 | ----------- |
| 1954 | 18,141.55 | 27,499.99 | ----------- |
| 1953 | 3,655.98 | 21,279.65 | ----------- |
| 1952 | 991.06 | 1,472.78 | ----------- |
| 1951 | 8,782.91 | | ----------- |

[1] The original stipulation of facts submitted by the parties shows the balance in the Fitzgerald-Dixie account as of July 31, 1966, to be $169,521.16 and the balances in the Loans-Dixie account as of July 31, 1966–68, to be $21,805. A supplemental stipulation filed by the parties, without purporting to supersede the original stipulation, shows such balances in the amounts appearing in the above table.

No notes or loan agreements were made in respect of the advances shown in the foregoing table. The stipulated materials fail to establish the rates or amounts of interest, if any, called for, or in fact paid, upon the indebtedness, nor does the record disclose the purposes for which the loans were made or the uses to which the proceeds were put by the borrowers.

Both Fitzgerald and Loans were operated at a profit in each of the taxable years in issue, but Dixie sustained a net operating loss in each of the years 1966–68. Dixie's corporate charter provided that the corporate objective was "pecuniary benefit to the shareholders." The following table represents a summary of data contained in the income tax returns of Fitzgerald, Loans, and Dixie:

| | Fitzgerald—TYE July 31— | | | Loans—TYE July 31— | | | Dixie—TYE Dec. 31— | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1966 | 1967 | 1968 | 1966 | 1967 | 1968 | 1966 | 1967 | 1968 |
| Gross receipts | $477,816 | $552,485 | $508,652 | | | | $1,408,465 | $930,521 | $1,119,090 |
| Cost of goods sold | (400,357) | (477,751) | (433,693) | | | | (1,229,203) | (812,663) | (1,049,769) |
| Gross profit | 77,459 | 74,734 | 74,959 | | | | 179,262 | 117,858 | 69,321 |
| Finance charges | 3,534 | 6,033 | 4,666 | $8,462 | $8,528 | $8,621 | | | |
| Other interest | 5,027 | 6,086 | 5,597 | | | | | | |
| Miscellaneous income | 2,423 | 2,821 | 2,739 | 262 | 32 | | 923 | 523 | 234 |
| Total income | 88,443 | 89,674 | 87,961 | 8,724 | 8,560 | 8,621 | 180,185 | 118,381 | 69,555 |
| Interest expense | (4,920) | (6,528) | (4,279) | | | | (47,267) | (40,231) | (46,520) |
| Net operating loss deduction | | | | | | | (2,629) | (44,850) | (95,532) |
| Other deductions | (71,576) | (73,170) | (67,054) | (4,535) | (5,834) | (3,403) | (175,139) | (128,832) | (129,148) |
| Taxable income | 11,947 | 9,976 | 16,628 | 4,189 | 2,726 | 5,218 | (44,850) | (95,532) | (201,645) |

The following table represents a summary of the data contained in each corporation's yearend balance sheets:

| | Fitzgerald—balances as of July 31— | | | | Loans—balances as of July 31— | | | | Dixie—balances as of Dec. 31— | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1965 | 1966 | 1967 | 1968 | 1965 | 1966 | 1967 | 1968 | 1965 | 1966 | 1967 | 1968 |
| **Assets:** | | | | | | | | | | | | |
| Cash | $150,921 | $169,449 | $145,535 | $158,032 | $7,098 | $7,100 | $6,163 | $872 | $361,138 | $319,909 | $330,746 | $349,549 |
| Notes and accounts receivable | 66,647 | 73,012 | 79,281 | 87,784 | 60,731 | 52,093 | 50,454 | 46,386 | 964 | 1,081 | 6,516 | 1,110 |
| Inventories | 118,831 | 155,608 | 117,581 | 163,470 | | | | | 1,573,474 | 1,165,977 | 1,442,682 | 1,184,611 |
| Prepaid expenses | 907 | | | | | | | | 3,500 | 3,500 | 3,500 | 3,500 |
| Buildings and fixed depreciable assets (less accumulated depreciation) | 5,456 | 5,612 | 4,275 | 3,697 | | | | | 84,461 | 117,250 | 137,471 | 175,738 |
| Land | | | | | 3,000 | 3,000 | 3,000 | 3,000 | 750 | 750 | 750 | 750 |
| Other investments | | | | | | | | | | | | |
| Amounts due from affiliates | 179,693 | 180,214 | 198,481 | 194,876 | 90,633 | 101,139 | [1]105,445 | 111,739 | 17,238 | 19,517 | 45,678 | |
| Amounts due from stockholder | | | | | 1,026 | 1,026 | [1]1,026 | 1,125 | | | | |
| Total assets | 522,455 | 683,895 | 545,103 | 607,859 | 162,488 | 164,348 | 166,088 | 162,322 | 2,041,525 | 1,627,984 | 1,967,343 | 1,715,258 |
| **Liabilities and capital:** | | | | | | | | | | | | |
| Accounts payable | 9,761 | 6,487 | 5,381 | 6,868 | 632 | 516 | 597 | 494 | 5,127 | 16,712 | 15,324 | 34,090 |
| Amounts due to affiliates | 76,477 | 87,665 | 90,812 | 96,282 | 369 | 369 | 369 | 369 | 226,375 | 231,502 | 232,118 | 201,690 |
| Amounts due to stockholder | 25,211 | 25,320 | 21,053 | 14,640 | | | | | 395,812 | 406,931 | 418,547 | 450,546 |
| Other current liabilities | 189,363 | 233,383 | 189,035 | 238,487 | 11,028 | 9,738 | 9,270 | 1,489 | 1,260,263 | 861,112 | 1,220,309 | 984,000 |
| Capital stock | 50,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Earned surplus | 171,643 | 181,040 | 188,822 | 201,582 | 125,459 | 128,725 | 130,852 | 134,980 | 53,948 | 11,727 | (38,955) | (145,068) |
| Total liabilities and capital | 522,455 | 683,895 | 545,103 | 607,859 | 162,488 | 164,348 | 166,088 | 162,322 | 2,041,525 | 1,627,984 | 1,967,343 | 1,715,258 |

[1] The amounts shown are taken from a statement accompanying the income tax return for the taxable year ending in 1967. The comparable statement accompanying the return for the year ending in 1968 shows amounts "due from affiliates" and "due from stockholder," as of July 31, 1967, to be $105,346 and $1,125, respectively.

ummary at

In his separate deficiency notices to Fitzgerald and Loans, the Commissioner determined:

that interest income reported on your return for each year involved herein is understated by the amount shown below, which amount constitutes the arm's length interest that should have been charged by you on monies advanced by you to * * * corporations owned or controlled by the same interests. Under the authority of section 482 of the 1954 Code, additional gross income is allocated to you as shown below. It is determined that this allocation is necessary to prevent the evasion of taxes and to clearly reflect your income and the income of [the corporations to which amounts were advanced] * * *

The additional interest income referred to above was computed by the Commissioner in the respective deficiency notices as shown in the following tables:[1]

|  | Fitzgerald—TYE July 31— | | |
|  | 1966 | 1967 | 1968 |
|---|---|---|---|
| Average monthly balance of advances made by Fitzgerald to Dixie | $169,713.00 | $173,178.00 | $180,070.00 |
| Appropriate interest rate | 5% | 5% | 5% |
| Interest income earned by Fitzgerald as corrected | $8,485.64 | $8,658.90 | $9,003.58 |
| Amount reported | $5,375.00 | $5,375.00 | $3,875.00 |
| Additional interest income earned by Fitzgerald on advances to Dixie | $3,110.64 | $3,283.90 | $5,128.58 |

|  | Loans—TYE July 31— | | |
|  | 1966 | 1967 | 1968 |
|---|---|---|---|
| Average monthly balances of advances made by Loans to: | | | |
| Fitzgerald | $72,693.00 | $73,293.00 | $77,243.00 |
| Dixie | $21,806.00 | $21,806.00 | $21,806.00 |
| Appropriate interest rate | 5% | 5% | 5% |
| Additional interest income earned by Loans on advances to: | | | |
| Fitzgerald | [1] $3,634.87 | $3,664.96 | $3,862.44 |
| Dixie | $1,090.29 | $1,090.29 | $1,090.29 |

[1] The Commissioner has conceded, without explanation, that a mathematical error resulting in an overstatement of the additional tax due was made in computing the adjustment in respect of the advances made by Loans to Fitzgerald during the first 5 months of the taxable year ending July 31, 1966. Of the total adjustment in Loans' income for that year relating to advances to Fitzgerald ($3,634.87), the amount of $2,196.48 (attributable solely to advances made during the last 7 months of the taxable year ending July 31, 1966) remains in dispute.

In his deficiency notice to Fitzgerald the Commissioner informed Fitzgerald that it would be entitled to correlative adjustments (deductions) for each of its taxable years ending July 31, 1966–68, if it were finally determined that the income of Loans should be increased for each such taxable year by reason of the advances from Loans to Fitzgerald. The Commissioner advised Fitzgerald to file an appropriate claim, and Fitzgerald has accordingly filed a protective claim for refund (Treasury Form 843) for each of the taxable years.

Petitioners' principal argument is that the imputation of interest income to them to reflect arm's-length charges on the advances they

[1] The underlying basis for the amounts shown in the two tables does not appear in the record; however, petitioners do not dispute the figures thus used by the Commissioner.

made to their affiliates was beyond the scope of the Commissioner's power under section 482 of the 1954 code.[2] They have not contended that interest was in fact charged upon the advances in question at arm's-length rates, nor have they questioned the Commissioner's use of a 5-percent interest rate or his determination of the average monthly balances of outstanding loans and the amounts of interest income reported by Fitzgerald. We hold that the Commissioner's determinations were authorized by the statute.

With the recent decision of the Court of Appeals in *B. Forman Co. v. Commissioner*, 453 F. 2d 1144 (C.A. 2) reversing in this connection 54 T.C. 912, certiorari denied 407 U.S. 934, rehearing denied 409 U.S. 899, a divergence of views has developed on the issue of whether the Commissioner may use section 482 to impute income to an organization transferring goods to, or performing services for, a related party at less than an arm's-length charge where the controlled group realized no gross income through dealings with third parties as a consequence of the use or consumption of the goods or services by the transferee organization.[3] The Court of Appeals in *Forman* sustained the Government's position, 453 F. 2d at 1155–1156, whereas cases decided prior to *Forman*, which are relied upon by petitioners herein, had held that section 482 could not thus be used to "create" hypothetical income. *Tennessee-Arkansas Gravel Co.* v. *Commissioner*, 112 F. 2d 508 (C.A. 6), reversing a Memorandum Opinion of the Board of Tax Appeals;[4] *Huber Homes, Inc.*, 55 T.C. 598; *PPG Industries, Inc.*, 55 T.C. 928, 1007–1010; *Texsun Supply Corporation*, 17 T.C. 433, 443–445, acq. 1952–1 C.B. 4; *Smith-Bridgman & Co.*, 16 T.C. 287, 293–294, acq. 1951–1 C.B. 3;[4] *E. C. Laster*, 43 B.T.A. 159, 176–177, acq. 1941–1 C.B. 7, modified on other issues 128 F. 2d 4 (C.A. 5).

*Kahler Corp.*, 58 T.C. 496, nonacq. 1972–2 C.B. 3, and *Kerry Investment Co.*, 58 T.C. 479, nonacq. 1972–2 C.B. 3—both of which cases, like the one now before us, involved loans upon which less than an arm's-length rate of interest was charged—presented this Court with the opportunity to reexamine its position on the "creation of income" problem under section 482 in light of the decision of the Court of

---

[2] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

[3] This issue was not considered by the Tax Court in *Forman,* because the Tax Court had found sec. 482 inapplicable for another reason which was rejected by the Court of Appeals.

[4] The Commissioner explained his acquiescence in *Smith-Bridgman* and his position in respect of *Tennessee-Arkansas Gravel Co.* in Rev. Rul. 67–79 (T.I.R. 838), 1967–1 C.B. 117.

Appeals in *Forman*. In those decisions, we announced our disagreement with the broad result reached by the Second Circuit and adhered to our prior view that section 482 does not authorize the Commissioner to "create" hypothetical income. However, taking note of the dictum in *Huber Homes, Inc.*, 55 T.C. 598, 610, that "if, as a consequence of * * * use or consumption by the transferee [of goods transferred, or services performed, at less than an arm's-length charge], income is realized within the controlled group, an entirely different question would be presented as to whether such income or a portion thereof might be allocated to the transferor," we held further, in *Kerry*, that income in fact earned by the debtor corporation with the proceeds of certain of the loans involved therein was properly allocable to the creditor. 58 T.C. at 485–488, 491. Of particular consequence in the present case is the additional rule, established by *Kerry*, that the taxpayer seeking to avoid the impact of an adverse determination by the Commissioner has the burden of proving that the proceeds of each particular loan were not used by the borrower to produce gross income in the taxable year. 58 T.C. at 489–490.

It is thus clear under our recent decisions that gross income earned by a debtor corporation may be allocated to the creditor, in accordance with a determination by the Commissioner, to the extent that the creditor fails to establish that such income was not earned with the proceeds of funds lent at less than an arm's-length rate. Moreover, so long as the Commissioner proceeds under the theory that gross income is to be allocated—rather than under the theory that interest income may be imputed "without regard to whether the * * * borrowed funds produced income," cf. *Kahler Corp.*, 58 T.C. at 512—such allocation is permissible even if the Commissioner chooses to cast the appropriate amount of allocable gross income in terms of an arm's-length "interest" charge. See *Kerry Investment Co.*, 58 T.C. at 493; but see *PPG Industries, Inc.*, 55 T.C. 928, 1009.

In the case now before us, the Commissioner has advanced alternative theories in support of his determinations. He has renewed his argument that he is empowered by section 482 to impute interest income to petitioners irrespective of the uses to which the borrowed funds were put by their affiliates. To sustain him on that ground would be at odds with our longstanding position on section 482 which we have so recently reaffirmed, and we decline to do so. The Commissioner has also argued, however, that each of the debtor corporations had gross income in each of the taxable years in issue in amounts far greater than the amounts of income which he has determined should be allocated to petitioners, and that petitioners, who had the burden of proof, have introduced no evidence tending to establish that at least the requisite portions of such gross income were

968

not earned with the proceeds of the loans in issue. Pursuant to our holding in *Kerry*, we hold that this alternative argument by the Commissioner must prevail.

We reject petitioners' argument that at most only a comparatively minimal amount of gross income earned by the debtor corporations during the taxable years is traceable to advances made during those years, that the major portions of the receivable balances for the years in issue were created by loans made in prior years, and that, relying upon *PPG Industries, Inc.*, 55 T.C. 928, 1009–1010, such prior year loans (even though outstanding during the taxable years) could not be regarded as the source of any income realized during the taxable years. Irrespective of the times at which various loans were made, the debtor corporations had full use in each taxable year of all of the borrowed funds which had not been repaid (or of the assets into which such funds had been converted), and it was incumbent upon petitioners to establish that such funds (or assets) did not generate gross income in each of the taxable years. Nothing in the stipulated materials permits such "tracing" to be undertaken, and petitioners have thus failed to carry their burden of proof. In the *Kerry* case itself, the proceeds of certain loans which had been outstanding as long (over 17 years) as any of those involved here, and nearly as long as those involved in *PPG* (about 20 years), were not traced and were therefore deemed to have produced gross income during the years in issue. It is therefore incumbent upon us to follow our more recent decision in *Kerry*, which was reviewed by the Court, rather than the prior unreviewed decision in *PPG*.

*Decision will be entered for the respondent in docket No. 2135–72.*

*Decision will be entered under Rule 50 in docket No. 2136–72.*