FITZGERALD MOTOR COMPANY, INC., and Loans, Inc., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 74–1291.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1975.

Richard E. Thomasson, J. Robert Hardcastle, Atlanta, Ga., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Meade Whitaker, Chief Counsel, Chris J. Ray, Atty., Internal Revenue Service, Meyer Rothwacks, Chief, App. Sec., Robert G. Burt, Atty., Jonathan S. Cohen, Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

Pursuant to 26 U.S.C. § 482, the Commissioner of Internal Revenue allocated additional income to Petitioner-Appellants as a result of loans between and among three sister corporations. The taxpayers filed petitions in the United States Tax Court for a redetermination of the assessed deficiencies in taxes for the years 1966 through 1968, totaling $7,874.43. The Tax Court entered judgment against them, 60 T.C. 957 (1973), and this appeal followed. We affirm.

*Facts*

Taxpayer, *Fitzgerald Motor Company, Inc.* (Fitzgerald) is a Georgia corporation engaged in the retail sale of automobiles. Taxpayer, *Loans, Inc.*, (Loans), also a Georgia corporation, is engaged in the business of providing financing on automobiles sold by Fitzgerald. At all relevant times, the sole stockholder of both Fitzgerald and Loans was B. I. Anderson. Mr. Anderson also owned all of the stock of Dixie Peanut Company, Inc. (Dixie), a Georgia corporation, engaged in the sale of peanuts and corn as a wholesaler.

During the taxable years in issue as well as prior thereto, both *Fitzgerald* and *Loans*, made advances to Dixie. Moreover, Fitzgerald obtained advances from Loans. As the result of these advances among three entities, which were owned by the same individual, the balances in the inter-company loan accounts for the years 1951 through 1968 were as follows:

| Year | Owed to Fitzgerald by Dixie | Owed to Loans by Fitzgerald | Owed to Loans by Dixie |
|------|------|------|------|
| 1968 | $182,689.73 | $80,199.80 | $21,805.86 |
| 1967 | 174,933.07 | 74,499.41 | 21,805.86 |
| 1966 | 169,783.66 | 71,304.90 | 21,805.86 |
| 1965 | 169,521.16 | 62,935.89 | 21,805.86 |
| 1964 | 188,058.40 | 39,368.93 | 21,805.86 |
| 1963 | 181,843.31 | 46,975.91 | 21,805.86 |
| 1962 | 181,043.91 | 27,690.44 | 21,805.86 |
| 1961 | 175,923.70 | 28,693.01 | 16,000.00 |
| 1960 | 76,840.07 | 25,507.60 | 10,000.00 |
| 1959 | 67,829.92 | 30,565.40 | 10,000.00 |
| 1958 | 59,584.35 | 36,633.44 | 10,000.00 |
| 1957 | 52,380.82 | 13,900.45 | 10,000.00 |
| 1956 | 45,432.46 | 4,225.05 | |
| 1955 | 30,572.13 | 8,789.97 | |
| 1954 | 18,141.55 | 27,499.99 | |
| 1953 | 3,655.98 | 21,279.65 | |
| 1952 | 991.06 | 1,472.78 | |
| 1951 | 8,782.91 | | |

No notes or other evidences of indebtedness were issued with respect to the above indicated inter-company advances. The record does not indicate the rates or amounts of interest, if any, called for or in fact paid upon the indebtedness, nor does the record disclose the purposes for which the loans were made or the manner in which the loan proceeds were used by the borrowers.

Fitzgerald and Loans were operated at a profit in each of the years in question, but Dixie sustained a net operating loss for each of those years. Dixie did real-

ize, however, a substantial gross profit in each of the years 1966 through 1968.

In his notices of deficiencies to taxpayers, the Commissioner determined that the interest income reported by Loans was understated to the extent that it failed to charge an arm's-length rate of interest on the monies which it had advanced to Fitzgerald and Dixie, and that the interest income of Fitzgerald was understated to the extent that it had loaned money to Dixie at less than arm's-length interest. Under the authority of Section 482 of the 1954 Code, the deficiency notices further allocated

additional income to taxpayers in order to prevent the evasion of taxes and to clearly reflect their income and that of Dixie. In this deficiency notice, Fitzgerald was notified that it would be entitled to correlative adjustments (i. e., interest deductions) for each of the years 1966 through 1968 if it were finally determined that the income of Loans should be increased for each of those years because of the advances from Loans to Fitzgerald.

The amounts of additional income allocated to each taxpayer are as follows:[1]

|  | 1966 | 1967 | 1968 |
|---|---|---|---|
| Fitzgerald | $3,110.64 | $3,283.90 | $5,128.58 |
| Loans (advances to Fitzgerald and Dixie) | $4,725.16 [1] | $4,755.25 | $4,952.73 |

The above amounts were determined by computing simple interest at an arm's-length rate of 5 percent on the average monthly balance during the tax years of the advances made by taxpayers. Both Dixie and Fitzgerald had gross income substantially in excess of the interest charge allocated to taxpayers under Section 482.

The Tax Court rejected the Commissioner's primary contention that Section 482 authorizes him to allocate additional interest income to a taxpayer who has loaned money to a commonly controlled corporation at a less than arm's-length rate of interest, regardless of whether or not the borrowed funds produced income. The Tax Court, however, sustained the Commissioner's allocation on the basis that taxpayers had failed to meet their burden of proving that the reallocated income for the years in issue did not result from the debtors' use of the less than arm's-length loans. Although for a different reason, we have reached the same conclusion as the Tax Court, and its decision is affirmed.

1. The Commissioner conceded below that because of a mathematical error the additional

## Analysis

On appeal, taxpayers seek to defend the tracing of income theory adopted by the Tax Court and contend that they met their burden of establishing that the borrowed funds did not generate additional income. In the alternative, taxpayers assert that the Commissioner improperly computed the amount of interest allocated, failed to make necessary correlative adjustments, and acted arbitrarily and unreasonably in making the allocations.

Appellant taxpayers rely on a series of Tax Court cases dating back to 1940 which in general hold that before income can be allocated to a borrower under Section 482, income must in fact exist. Tennessee-Arkansas Gravel Co. v. Commissioner, 6 Cir., 1940, 112 F.2d 508; Smith-Bridgman & Co. v. Commissioner, 16 T.C. 287 (1951) acq. 1951-1 C.B. 3; Texsun Supply Co. v. Commissioner, 17 T.C. 433 (1951); P. P. G. Industries, Inc. v. Commissioner, 55 T.C. 928 (1970); Huber Homes, Inc. v. Commissioner, 55 T.C. 598 (1971).

income allocated to Loans for 1966 was overstated by $1,438.39.

The Tax Court has continuously held that the Commissioner's authority to allocate income under Section 482 in the case of a bargain loan is dependent on the borrower realizing gross income from the use of the loan, and has been placing on the taxpayer the burden of proving that the proceeds of interest free loans did not produce gross income. This is a case of first impression in this Court, and Appellant urges us to adopt the Tax Court's "tracing" theory, contending that no gross income was generated by the inter-company loans.

The Tax Court's tracing theory yields a two prong test: (1) Did the borrower have gross income during the year in question and (2) Was this income derived from using the borrowed funds? In addition to being needlessly complicated, this procedure adds a requirement (the debtor's gross income) to those given in both Section 482 and the applicable Regulations—neither of which requires gross income as an element.[2]

More specifically, Treas.Reg. 1.482–1(d)(4)[3] allows the Commissioner to make an appropriate allocation to reflect an arm's-length charge for interest on an advance from one member of a controlled group to another, whether or not the borrower realizes income from the advance.

■ Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and are not to be overruled except for weighty reasons. Commissioner v. South Texas Company, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1947). The applicable Regulations have been reviewed and approved by the Second, Eighth, and Ninth Circuits. These courts agree that gross income by the debtor is immaterial.

In B. Forman v. Commissioner, 2 Cir., 1972, 453 F.2d 1144, cert. denied, 407 U.S. 934, 92 S.Ct. 2458, 32 L.Ed.2d 817 (1972), the taxpayers (two independent corporations) created a jointly-owned subsidiary (Midtown) to develop a shopping center. Both taxpayers loaned Midtown $1,000,000 and in exchange received notes bearing 3½% interest. These notes were eventually exchanged for non-interest bearing notes. The Commissioner allocated interest income to each taxpayer at the rate of 5% per annum on the outstanding indebtedness. After finding the requisite common control between taxpayers and Midtown, the Second Circuit sustained the allocation, adding

---

**2.** Treas.Reg. § 1.482–2(a)(1) provides:

Where one member of a group of controlled entities makes a loan or advance directly or indirectly to, or otherwise becomes a creditor of, another member of such group, and charges no interest, or charges interest at a rate which is not equal to an arm's length rate as defined in subparagraph (2) of this paragraph, the district director may make appropriate allocations to reflect an arm's length interest rate for the use of such loan or advance.

**3.** Treas.Reg. § 1.482–1(d)(4) provides:

If the members of a group of controlled taxpayers engage in transactions with one another, the district director may distribute, apportion, or allocate income, deductions, credits, or allowances to reflect the true taxable income of the individual members under the standards set forth in this section and in § 1.482–2 notwithstanding the fact that the ultimate income anticipated from a series of transactions may not be realized or is realized during a later period. For example, if one member of a controlled group sells a product at less than an arm's length price to a second member of the group in one taxable year and the second member resells the product to an unrelated party in the next taxable year, the district director may make an appropriate allocation to reflect an arm's length price for the sale of the product in the first taxable year, notwithstanding that the second member of the group had not realized any gross income from the resale of the product in the first year. Similarly, if one member of a group lends money to a second member of the group in a taxable year, the district director may make an appropriate allocation to reflect an arm's length charge for interest during such taxable year even if the second member does not realize income during such year. The provisions of this subparagraph apply even if the gross income contemplated from a series of transactions is never, in fact, realized by the other members.

These regulations [Treas.Reg. § 1.482–2(a)] must prevail, for they are entirely consistent with the scope and purpose of § 482. The instant loans without interest are obviously not at arm's length, since no unrelated parties would loan such large sums without interest. The allocation of the interest income to taxpayers was necessary in order to properly reflect their taxable incomes. *Forman*, supra at 1156.

In Kahler Corp. v. Commissioner, 8 Cir., 1973, 486 F.2d 1, taxpayer, a parent corporation, borrowed money at rates exceeding 5%, deducted the interest paid as an expense in determining its taxable income, and then loaned the money interest free to its subsidiaries. Pursuant to § 482 and Treas.Reg. 1.482–2(a), the Commissioner allocated interest income at the rate of 5% per annum to the parent. The Tax Court overruled the Commissioner on grounds that he failed to establish that the advances to the subsidiaries resulted in the production of gross income. The Eighth Circuit reversed the Tax Court, stating that it agreed with the position taken by the Commissioner and the Second Circuit in *Forman*. After finding that the Commissioner's allocation of interest income to Kahler was consistent with Treas.Reg. 1.482–2, that Court added

The proper standard to be applied in cases such as this is whether or not the loans from the taxpayer to other members of a controlled group would have been made on an interest free basis in arm's length dealings between uncontrolled taxpayers. Whether the Commissioner shows that the borrowed funds actually produced income for the borrowing corporation is of no importance. Money, and the use of money,

is an essential element in the profit making activities of most corporations, just as raw material is a necessary component in the manufacture of salable goods. *Kahler, supra*, at p. 5.

During the pendency of this appeal, the Ninth Circuit has joined the Second and Eighth Circuits in holding that tracing in order to determine whether the borrowed funds generated gross income to the borrower is neither necessary nor required. Kerry Investment Co. v. Commissioner, 9 Cir., 1974, 500 F.2d 108.

■ In our opinion, the position taken by the Second, Eighth, and Ninth Circuits is the preferable one. Each of these Courts has examined the legislative intent of § 482 and they have all determined that the section is applicable regardless of whether or not the debtor uses it to produce income. To adopt the rule of the Tax Court is to place a premium on sophisticated accounting and will afford a tax saving to those shrewd enough to invest borrowed money in nonproductive assets, which, in turn, frees existing funds for income producing activities.

■ Taxpayers next assert as a ground for reversal that the Commissioner improperly computed the income allocable to them when he applied an arm's-length rate to the average monthly balance of their advances during the years in issue. The Tax Court rejected this argument, and we think correctly so. It was noted that the debtor corporations had full use in each taxable year of all of the borrowed funds which had not been repaid. This is the procedure used in *Kahler, Forman*, and *Kerry*. We think this should be adopted as the rule in this Circuit. There can be no question about the rate of 5 percent per annum, in light of Treas.Reg. § 1.482–2(a)(2)(ii).[4]

4. (2) *Arm's length interest rate.* For the purposes of this paragraph, the arm's length interest rate shall be the rate of interest which was charged, or would have been charged at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances. All relevant factors will be considered, including the amount and duration of the loan, the security involved, the credit standing of the borrower, and the interest rate prevailing at the situs of the lender or creditor for comparable loans. If the creditor was not regularly engaged in the business of making loans or advances of the same general type as the loan or advance in question to unrelated parties,

■ Taxpayers also assert that the allocation of income to them constitutes a prohibited creation of income because the Commissioner has failed to make correlative adjustments with respect to Dixie's income. However, a reading of Treas.Reg. § 1.482(d)(2) discloses that this is not the case.

■ When an adjustment is made to the income of one member of a group of controlled taxpayers (the primary adjustment), a correlative adjustment is made to the income of any other member of the group involved in the allocation. However, this correlative adjustment is actually made *only* if the tax liability of the other member is affected for any pending taxable year. Because Dixie operated at a net loss during the years in question, and hence correlative adjustments would have no effect on Dixie's tax liability for those years, there is no requirement that a correlative adjustment actually be made. For purposes of determining Dixie's tax liability in later years, the adjustment is *deemed* to have been made. Further, because the primary adjustment in this case will not be considered made until this court action is final, no correlative adjustment is yet due anyway. Treas.Reg. § 1.482(d)(2)(v).

■ Appellants' final assignment of error is that the Commissioner erred in allocating additional income to them because the advances in question did not distort income, nor were they designed to evade taxes. As previously discussed, the failure to charge an arm's-length rate of interest distorted income to the extent that the lenders' incomes were understated, and Dixie's was overstated. Actual intent to evade taxes is not a prerequisite to the Commissioner's invocation of § 482. The authority to determine true taxable income extends to any case in which the taxable income of a controlled taxpayer is other than it would have been had the taxpayer been dealing at arm's length with an uncontrolled taxpayer. Treas.Reg. § 1.482–1(c).

### Conclusion

In sum, although for a reason different to that assigned by the Tax Court, it nevertheless reached the right result. Its Judgment, therefore, is

Affirmed.

the arm's length rate for purposes of this paragraph shall be—

(i) The rate of interest actually charged if at least 4 but not in excess of 6 percent per annum simple interest,

(ii) 5 percent per annum simple interest if no interest was charged or if the rate of interest charged was less than 4, or in excess of 6 percent per annum simple interest, unless the taxpayer establishes a more appropriate rate under the standards set forth in the first sentence of this subparagraph. For purposes of the preceding sentence if the rate actually charged is greater than 6 percent per annum simple interest and less than the rate determined under the standards set forth in the first sentence of this subparagraph, or if the rate actually charged is less than 4 percent per annum simple interest and greater than the rate determined under the standards set forth in the first sentence of this subparagraph, then the rate actually charged shall be deemed to be a more appropriate rate under the standards set forth in the first sentence of this subparagraph. Notwithstanding the other provisions of this subparagraph if the loan or advance represents the proceeds of a loan obtained by the lender at the situs of the borrower the arm's length rate shall be equal to the rate actually paid by the lender increased by an amount which reflects the costs or deductions incurred by the lender in borrowing such amounts and making such loans, unless the taxpayer establishes a more appropriate rate under the standards set forth in the first sentence of this subparagraph.