REVEL D. COOPER AND JOSEPHINE G. COOPER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

R. D. COOPER CONSTRUCTION CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1038-73, 1039-73.    Filed July 16, 1975.

*Charles B. Sklar,* for the petitioners.

*Bruce McArdle,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies of $14,769 and $147,051 in the Federal income tax of Revel D. and Josephine G. Cooper for 1967 and 1968; and $2,832 and $4,148.13 in the Federal income tax of the R. D. Cooper Construction Co., Inc., for the fiscal years ended June 30, 1968, and September 30, 1968. By an amendment to answer, respondent proposed an additional deficiency of $44,276.82 in the Federal income tax of the R. D. Cooper Construction Co., Inc., for the fiscal year ended June 30, 1968.

We are to decide if respondent is authorized under section 482 of the Internal Revenue Code of 1954, as amended,[1] to allocate rental income from a corporation to its controlling shareholders when they have permitted the corporation to use certain of their assets, without charge, on jobs which it was engaged to perform.

FINDINGS OF FACT

Certain facts have been stipulated and are found as stipulated.

Revel D. and Josephine G. Cooper, husband and wife, were residents of Zachary, La., when their petition herein was filed. They filed joint Federal income tax returns for 1967 and 1968 with the District Director of Internal Revenue, New Orleans, La.

The R. D. Cooper Construction Co., Inc., is a corporation organized and existing under the laws of Louisiana. Its principal place of business was in Zachary, La., when its petition herein was filed. It filed U.S. corporation income tax returns for the fiscal years ended June 30, 1968, September 30, 1968, and September 30, 1969, with the District Director of Internal Revenue, New Orleans, La.

At all times relevant, the Coopers held all the outstanding shares of stock in the R. D. Cooper Construction Co., Inc., as community property.

Prior to July 1, 1967, the Coopers were the proprietors of a construction firm established by Revel in 1945 and styled "R. D. Cooper Construction Co." (hereafter referred to as the firm). Personally managed by Revel and staffed by over 200 employees,

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

the firm engaged principally in the installation of electric powerlines.

Pursuant to a decision made by the Coopers to conduct the firm's business in corporate form, the R. D. Cooper Construction Co., Inc. (hereafter referred to as the corporation), was organized on June 30, 1967. On that day Revel offered to transfer to the corporation certain of the firm's assets which were valued at $661,185. The board of directors accepted the assets on behalf of the corporation and agreed that in exchange the corporation would issue 50 shares of capital stock, the value of which was fixed by the directors at $102,423; issue a promissory note in the amount of $130,000, payable in 12 years and bearing interest at the annual rate of 8 percent; and assume firm liabilities amounting to $428,762.

The Coopers did not include among the assets which they transferred to the corporation, the buildings and equipment which they had acquired for use in the firm's operations. Rather the Coopers agreed that these assets and such other depreciable property as they would subsequently acquire for use in the business would be available to the corporation free of charge until the corporation's net annual income, computed under the completed contract method of accounting exceeded $50,000. The corporation had only to pay for the maintenance of the assets while using them on jobs which it was engaged to perform.[2] Throughout the period in issue the corporation acquired no depreciable assets of its own. Instead it used those placed at its disposal by the Coopers. On its returns filed for the fiscal years ended June 30, 1968, September 30, 1968, and September 30, 1969, the corporation reported gross profits derived from construction contracts in the following amounts: $237,132, $161,632, and $693,706, respectively.

After the corporation was organized, the Coopers entered into no new construction contracts personally; but they did retain ownership of 56 contracts which were in the process of completion on June 30, 1967. As of that date, the Coopers had earned

---

[2] Both the Coopers and the corporation reported income derived from construction contracts in accordance with the completed contract method of accounting. The use of this method is sanctioned by sec. 1.451-3(b)(2), Income Tax Regs., which provides:

(2) *Completed contract method.* Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion.

$463,172 in gross profits on these contracts; but they had not as yet been required to report these amounts under the completed contract method of accounting.

When the corporation was organized, the entire staff of the firm passed into the corporation's employ. Therefore out of necessity the Coopers relied on the corporation to complete the 56 contracts for them. Services performed by the corporation in connection with these contracts constituted 75 percent of the corporation's work in the second half of 1967 and 10.4 percent in the first half of 1968. By June 30, 1968, the 56 contracts were completed. The Coopers recognized gross profits of $830,945 on them.

The corporation was not compensated by the Coopers for the services it performed in connection with the 56 contracts. In an arm's-length transaction it would have charged them $152,053.64 for the services performed in the latter half of 1967 and $50,684.55 for those performed in the first half of 1968.

On their joint Federal income tax returns filed for 1967 and 1968 the Coopers reported taxable income of $239,953 and $131,130.

On its U.S. corporation income tax returns filed for its fiscal years ended June 30, 1968, September 30, 1968, and September 30, 1969, the corporation reported taxable income of $26,570, $9,896, and $46,864.

## OPINION

The Commissioner contends that a material distortion in the petitioners' income resulted when the corporation used assets belonging to the Coopers on jobs which it was engaged to perform, without having to pay rent. To eliminate this distortion, the Commissioner proposes to impute to the Coopers a reasonable rental for the corporation's use of their assets on jobs which it had contracted to perform, and to allow the corporation a commensurate rental expense deduction. We are to decide if the Commissioner is authorized by section 482 to make such an allocation.

Section 482 authorizes the Commissioner to allocate income between or among commonly controlled trade or business

organizations.[3] The Commissioner's authority to make the proposed allocation therefore depends upon whether in organizing the corporation, the Coopers withdrew from active engagement in a trade or business.[4] In our opinion, they did not.

When the corporation was organized to carry on the Coopers' preexisting construction business, the Coopers did not supply it with all the resources which would have enabled it to conduct that business independently. Rather the Coopers retained ownership of all the depreciable assets which were essential to the conduct of the business and permitted the corporation to use those assets without charge on jobs which the corporation contracted to perform. By virtue of this arrangement, the Coopers continued to participate in a business enterprise within the intendment of section 482. *Pauline W. Ach*, 42 T.C. 114, 124-125 (1964), affd. 358 F.2d 342 (6th Cir. 1966). See also *Richard Rubin*, 56 T.C. 1155, 1157-1158 (1971), affd. per curiam 460 F.2d 1216 (2d Cir. 1972).[5] Under the circumstances, the Commissioner is authorized by section 482 to make an allocation such as he has proposed, to insure that the Coopers will recognize the income derived from their assets. Secs. 1.482-1(b)(1) and 1.482-2(c)(1), Income Tax Regs.[6] Upon due con-

---

[3] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses.

[4] Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 15.06, p. 15-24 (3d ed.).

[5] Bittker & Eustice, *supra,* par. 15.06, p. 15-24, n. 41.

[6] Sec. 1.482-1(b)(1) provides:

*Scope and purpose.* (1) The purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining, according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer. * * *

For purposes of the aforesaid section, the term "true taxable income" is defined as "the taxable income * * * which would have resulted to the controlled taxpayer, had it in the conduct of its affairs * * * dealt with the other member or members of the group at arm's length." Sec. 1.482-1(a)(6).

Sec. 1.482-2(c)(1) provides:

* * * Where possession, use, or occupancy of tangible property owned or leased by one member of a group of controlled entities (referred to in this paragraph as the owner) is transferred by lease or other arrangement to another member of such group (referred to in this paragraph as the user) without charge or at a charge which is not equal to an arm's length rental charge * * * the district director may make appropriate allocations to

sideration of the entire record we have decided that $18,572 represents a reasonable rental for 1967; and that $84,948 and $94,386 represent reasonable rentals for the first and second halves of 1968, respectively. *Cohan v. Commissioner,* 39 F.2d 540 (2d Cir. 1930); *Pauline W. Ach, supra* at 126-127.

The petitioners contend that during the years in issue, the corporation did not have sufficient income to pay such rentals; and in consequence, that adjustment based upon them would result in the creation rather than the mere allocation of income. However, in view of the services which the corporation rendered to the Coopers in connection with jobs in process as of June 30, 1967, the Commissioner has conceded that the Coopers are entitled to additional business expense deductions of $152,053.64 for 1967 and $50,684.55 for 1968. In view of that concession, the parties are in agreement that the corporation's gross income for its fiscal year ended June 30, 1968, would be increased by $202,738.19.

In view of this agreement we find the aforesaid objection wholly unfounded. *Fitzgerald Motor Co. v. Commissioner,* 508 F.2d 1096, 1102 (5th Cir. 1975), affg. 60 T.C. 957 (1973).[7]

*Decisions will be entered under Rule 155.*

properly reflect such arm's length charge. * * *

[7] *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).